Howard F. RANSOM and Hazel B. Ransom, Plaintiffs-Appellees, Cross-Appellants,

v.

S & S FOOD CENTER, INC. OF FLORIDA, d/b/a Rich Plan of Pensacola, Defendant-Appellant, Cross-Appellee.

No. 81–7773.

United States Court of Appeals, Eleventh Circuit.

March 17, 1983.

Rehearing and Rehearing En Banc Denied April 26, 1983.

Joseph J. Lyman, Washington, D.C., for S & S Food Center Inc. of Fla.

Grodsky & Wilson, Irvin Grodsky, Mobile, Ala., for Howard F. and Hazel B. Ransom.

Before HENDERSON and HATCHETT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

The defendants below, S & S Food Center and Rich Plan Corporation, appeal from a judgment finding them liable to the plaintiffs under the Truth-in-Lending Act and the Alabama Consumer Finance Act.

## I. PROCEEDINGS BELOW

On July 21, 1975, the named plaintiffs purchased a Food Plan from S & S Food Center, Inc., a franchisee of a national organization, Rich Plan Corporation (the defendant-appellants are hereafter jointly referred to as "S & S"). The Plan, purchased under credit installment, embraced two contracts: 1) the purchase of a bulk food order; and 2) the purchase of a service contract designated as "Food Freezer Service Agreement" ("FFSA") providing various warranties and services with respect to the food purchases. Neither of the plans could be purchased without the other, and the charge for the FFSA was made whether the purchase was by cash or credit; the overwhelming majority of the purchases were by credit. At the time of the signing of the food order contract, the Ransoms delivered two checks to S & S, one as a down payment and one as the first of four monthly payments. Both checks bounced. Nevertheless, the Ransoms remained liable to the defendants on the two contracts.

The plaintiffs brought this action on July 20, 1976, alleging that the charge for the FFSA in fact constituted a finance charge under the Truth-in-Lending Act ("TILA") (15 U.S.C. § 1601 *et seq.*) and the Alabama Consumer Finance Act (5 Ala.Code § 316 *et seq.*). The plaintiffs charged the defendants with a violation of TILA disclosure provisions and Alabama usury laws.

On October 29, 1976, the plaintiffs were granted leave to file an amended complaint to maintain a class action. The class was certified, but on March 24, 1978, the court granted defendants' motion to decertify the class respecting state claims.

On January 10, 1979, the plaintiffs' motion for summary judgment as to liability was granted and Findings of Fact and Conclusions of Law were entered. The district court found that the "services" provided by the FFSA were not materially different from those already purchased in the food contract.

On January 23, 1980, Judge Hand recused himself and withdrew from the case, and the case was reassigned to Judge Thomas, who adopted all of Judge Hand's orders. On June 19, 1981, the court granted plaintiffs' motion for judgment as to damages. This appeal followed.

## II. STATEMENT OF ISSUES

A. Whether the orders issued by Judge Hand prior to his disqualification under 28 U.S.C. § 455(b) are void although later adopted by Judge Thomas after his independent review.

B. Substantive Liability

1. Whether a creditor was required to disclose as a finance charge charges imposed uniformly in both cash and credit transactions before the 1980 amendment to TILA.

2. Whether S & S is collaterally estopped from challenging its liability by *Berryhill v. Rich Plan of Pensacola,* 578 F.2d 1092 (5th Cir.1978).

C. Whether the district court erred in allowing the Ransoms to amend their complaint to provide for a class action after the statute of limitations had run for the filing of individual claims.

D. Whether the assessment of damages against the defendants exceeded the amount authorized by Alabama law.

E. Whether the assessment of damages against the defendants exceeded the amount authorized in class action suits under TILA.

F. Cross Appeal—Whether the trial court abused its discretion in decertifying the state law class action claims.

## III. DISCUSSION OF ISSUES

### A. *Judge Hand's Recusal*

■ Following his summary judgment ruling on defendants' liability (but prior to a ruling on damages), Judge Hand disqualified himself from this case on the basis of the Fifth Circuit's interpretation of 28 U.S.C. § 455[1] in *Potashnick v. Port City Construction Co.,* 609 F.2d 1101 (5th Cir. 1980). In *Potashnick,* the court held that Judge Hand was required to disqualify himself because one of the parties was represented by a law firm ("Hand, Arendall") in which his father was a partner. Since that same law firm represented the defendants in the present case, Judge Hand took appropriate recusal action.

Judge Thomas took over the case and issued the following order on June 19, 1981:

The Court has reviewed the entire file and rulings heretofore entered by Judge William B. Hand prior to his disqualification pursuant to the Fifth Circuit ruling

---

**1.** 28 U.S.C. § 455 provides in relevant part:

(a) Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his partiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances: (5)(iii) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such person . . . is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding.

\*   \*   \*   \*   \*   \*

(e) No . . . judge . . . shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b).

in *Potashnick* ... After reviewing the entire file and Judge Hand's rulings, I adopt and affirm all of the same as the rulings of this Court.

Judge Thomas denied defendants' motion: 1) to vacate the above order, 2) to vacate all of Judge Hand's rulings, and 3) for a new trial.

S & S attacks Judge Thomas's conclusion that Judge Hand's acts were only voidable, not void. It notes that the disqualifications required by 28 U.S.C. § 455(b) are non-waivable and, as such, any actions taken by a judge in violation of that section are necessarily void.

S & S also quotes *Potashnick* for the notion that inconvenience to the parties is always outweighed by the "... need to protect the dignity and integrity of the judicial process." 609 F.2d at 1112. S & S urges that this Court's ruling on this issue should not be affected simply because the present case proceeded for three and one-half years before Judge Hand recognized his statutory duties.

The Ransoms argue: 1) that the appellants are estopped from urging Judge Hand's disqualification as a ground for voiding his actions, and 2) that Judge Thomas's adoption of Judge Hand's orders can stand as an independent ruling since it was based on a full review of the evidence.

The appellees quote *Potashnick* ("... a litigant should not be permitted to utilize a disqualification issue as part of his trial strategy." 609 F.2d at 115) and urge that the *Potashnick* court envisioned a balancing of the parties' interests. Appellees note that: 1) S & S selected Hand, Arendall to represent them after they knew Judge Hand had been assigned to the case, and 2) they, the plaintiffs, were informed by the clerk of the potential conflict and given the opportunity to object to Judge Hand's handling of the case; no objection was made. The plaintiffs argue that the defendants should, under these circumstances, be estopped from escaping Judge Hand's adverse rulings.

Although this is an appealing argument in view of appellants having themselves employed Judge Hand's father's firm, we prefer to affirm the lower court ruling on this issue on appellees' second argument. No authority has been cited to us that requires the judge who succeeds a recused judge to rehear all previously-heard matters. The defendants' argument that all prior rulings are void is "frivolous," because those issues were decided not by Judge Hand, but by Judge Thomas after a review of the totality of the record. *See, e.g., Walker v. Wilkinson,* 3 F.2d 867, 869 (5th Cir.1925).

### B. *Finance Charges Under TILA*

The term "finance charge" under the TILA, 15 U.S.C. § 1605(a), consists of the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an *incident to* the extension of credit ..." (emphasis added).

Applying the statutory definition to the facts of this case, the trial court stated:

6. The Defendants engaged in a home solicitation sales or marketing program, the product of which is frozen food. However, as a condition precedent to the consumer's right to purchase frozen food, the consumer must first purchase a Food and Freezer Service Agreement, failing which the consumer would not be permitted to buy frozen food. (Deposition of Gene Fomas, pp. 77–78, and Plaintiffs Ex. No. 6).

7. Based on the above factual circumstances this Court finds that the Defendants have imposed upon the Plaintiffs a direct or indirect charge as an incident to the extension of credit by requiring that Plaintiffs purchase a Food and Freezer Service Agreement before they would have the right to purchase frozen foods. (R. 548).

Although the literal reading of the language of the statute "incident to the extension of credit," leaves little doubt but that the signing of the FFSA here was in fact an incident to the extension of the credit

allowed to the Ransoms, the appellants contend that the language should not be read literally but should be read in a manner consistent with the later amendment to the statute when the following was added to the above-quoted definition of finance charge: "The finance charge does not include charges of a type payable in a comparable cash transaction." In brief, appellants contend that interpretative letters of the staff of the Federal Reserve Board even prior to this amendment to the statute construed the law as not applying where even though a charge was truly incident to the extension of credit it was also required in the event that the underlying contract was for cash instead of credit. Appellants contend that the amendment of 1980 was the result of an effort by Congress to make clear what had been the proper construction of the statute up to that time.

The appellees respond that no matter how strong an argument can be made for construing the words "incident to the extension of credit" as being limited by a proviso that a charge is not incident to the extension of credit if it is also incident to the sale of a plan for cash, we are not free to accept that argument, even though we should be convinced of its correctness. This results from the fact that the Court of Appeals for the Fifth Circuit, by whose opinions rendered before October 1, 1981 we are bound, *see Bonner v. City of Prichard,* 661 F.2d 1206 (5th Cir.1981), has already decided this precise question in litigation to which these appellants were parties. In *Berryhill v. Rich Plan of Pensacola,* 578 F.2d 1092 (5th Cir.1978), this Court held:

> We hold that Rich Plan's Food and Freezer Service Agreement is a charge imposed as an incident to the extension of credit on the Food Plan Contract that must be included in the finance charge for the Food Plan Contract. Rich Plan benefits from the Food and Freezer Service Agreement because its security interest in the frozen food is protected. Rich Plan's failure to disclose the entire service charge on the Food Plan Contract subjects it to penalties under both the Truth-in-Lending Act and the Alabama Consumer Finance law.

578 F.2d at 1099.

■ The Ransoms contend that the defendants below are bound by this decision by the principle of collateral estoppel under the rationale of *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 327, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). We need not determine whether this would be a proper use of offensive collateral estoppel, since it is certain that we are bound by the *Berryhill* decision under the doctrine of *stare decisis,* absent a countervailing decision by the Supreme Court or by this Court sitting en banc. We are not at liberty to reconsider this issue.

Lest it be thought that we have overlooked that part of the facts in *Berryhill* to the effect that the record there disclosed that "an overwhelming proportion of the Rich Plan sales are to credit customers" we expressly note that in the case before us the court found that "although it allegedly offered to sell food for either cash or on credit, the overwhelming proportion of the Rich Plan sales are to credit customers." Appellant does not dispute the correctness of this finding by the court on the state of the record before it.

### C. Statute of Limitations and Class Action

The Ransoms filed a complaint in their individual capacities on July 20, 1976, the last day before the expiration of the one year statute of limitations of 15 U.S.C. § 1640(e). The Ransoms filed a motion for leave to amend the complaint and attached a copy of the amended complaint on October 1, 1976. On October 29, 1976, Judge Hand granted leave to file an amended complaint by the Ransoms as class representatives. The only transaction specifically cited in the amended complaint is the deal between S & S and the Ransoms on July 21, 1975. The class which was eventually certified included all credit customers of Rich Plan residing in Alabama who had contracted with Rich Plan between July 20, 1975, and August 25, 1977.

The appellants urge that the district court erred in denying their motion to dismiss the amended complaint since it was filed more than one year after the event upon which liability is alleged, *i.e.,* the contract of July 21, 1975. They contend that the "relation back" doctrine of Federal Rules of Civil Procedure, Rule 15(c)[2] is not applicable in the present case. Appellants cite *Arneil v. Ramsey,* 550 F.2d 774 (2d Cir.1977) and *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) as standing for the proposition that the broadening of a class does not relate back in a situation where the commencement of the action does not adequately notify the defendant of the "number and generic identity" of the potential plaintiffs.

■ The Ransoms respond that there is no question about the correctness of the trial court's certification of a class at least insofar as the class membership includes only those whose contracts with S & S were executed subsequent to the beginning of the statutory period of one year prior to the filing of the amended complaint. Then, as to the intervening period between July 21, 1975 and October 1, 1975, they argue that S & S must be estopped from attempting to exclude these plaintiffs since it consistently urged upon the trial court a ruling that the class should be restricted to those parties contracting with S & S after July 21, 1975. A review of the record indicates clearly that appellants did urge this date upon the trial court as the cutoff date for class membership. These arguments by the appellants were made at a time when the appellants were insisting that the date of the execution of the credit contract, rather than the last date upon which payments were to be made under the contract, should be the starting point for the statutory period. In any event, they cannot now be heard to complain that the trial court accepted the date they suggested as an appropriate starting point for the class membership.

We need not therefore determine whether, independently of this fact, this is the kind of case in which to apply the relation back theory.

D. *Are damages assessable under the Alabama law?*

The trial court had dismissed the Alabama class action which the plaintiffs presented as a pending claim for the class of contract purchasers. The only question for us here is whether on the motion for summary judgment, there was a substantial issue of fact before the trial court on the entire record, including pleadings, affidavits, and depositions, that would prevent the court from granting summary judgment in favor of the two individual plaintiffs under the Alabama statute.

The plaintiffs' recovery was based on 5 Ala.Code § 330 which provides:

> Any creditor charging a finance charge in excess of the amount authorized ... shall forfeit his right to any finance charge and shall refund to the debtor the total amount of the finance charge, which may be done by reducing the amount of the debtor's principal obligation. *If the debtor is entitled to a refund and the creditor refuses to refund within a reasonable time after written demand,* the debtor may recover a penalty of either twice the finance charge or ten times the amount of the excess charge, whichever is greater. (Emphasis added.)

■ It is clear from what has previously been said that the trial court correctly concluded by summary judgment that each of the Ransoms was a creditor and was entitled to have such benefits as were given them under a state law designed to protect them against the charges by a creditor of an illegal finance charge. It is clear that this Alabama statute, thus, gave to the Ransoms an absolute right to a "refund ... [of] the total amount of the finance charge,

**2.** Rule 15(c) provides in relevant part:

Whenever the claim or defense asserted in the amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

which may be done by reducing the amount of the debtor's principal obligation." Appellants contend that since the Ransoms made no payment to carry out the terms of their two contracts they could not be entitled to a refund. We agree with the determination by the trial court that they are entitled to a refund, particularly because the statute states that giving such a refund "may be done by reducing the amount of the debtor's principal obligation." There is nothing in the record that indicates that the appellants ever reduced the amount of the debtors' principal obligation until the amount of the debt was apparently discharged after the Ransoms went through a Chapter XIII proceeding in the bankruptcy court.[3]

Here, the trial court also entered a judgment against the appellants for 10 times the amount of the excess charge, apparently on the theory that the debtors had made a written demand for the refund and that the creditors had refused "to refund within a reasonable time" thereafter.

Petitioners cannot say that demand was not made, for the pretrial order states:

... written demand was made by the plaintiffs of the defendant S & S for a refund of finance charges in excess of the amount authorized by the Alabama Code prior to the filing of this complaint.

They do contend, however, that there is no proof of the failure of appellants to make the "refund" within a reasonable time after such notice. We conclude that the record, which is a record of undisputed facts so far as here relevant, supports the trial court's disposition of this matter. The record discloses that "late in 1975 the Ransoms sought relief under Chapter XIII of the Bankruptcy Act" and in January 1976, written demand was made by their counsel on the appellants for a refund of the finance charge. In an affidavit executed in December 1979, the president of Rich Plan said:

In late 1975, the plaintiff petitioned this Court for relief under Chapter XIII of the National Bankruptcy Act. As a result, the plaintiff's obligation to the defendant for $261.36 was discharged without a payment first having been made.

The plaintiffs' response to appellants' interrogatories, filed long before, stated that the plaintiffs were not indebted to S & S or to Rich Plan, by reason of an order of the bankruptcy judge for the Bankruptcy Court, Southern Division of the Southern District of Alabama, dated April 29, 1976. Thus, it appears without dispute that until the bankruptcy court in April 1976, discharged the indebtedness of the Ransoms asserted by these appellants, there had been no "refund", even by "reducing the amount of the debtor's principal obligation." We conclude that the trial court could on this record decide on a motion for summary judgment that the Alabama statutory requirements for the triggering of the penalty were satisfied.

E. *Damages Under TILA in Class Action*

The plaintiffs base their claim for recovery of damages on U.S.C.A. Title 15, Sections 1640(a)(1) and (a)(2)(B) which provide as follows:

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

---

**3.** It is to be noted that under Chapter XIII proceedings debts of the debtor are not automatically discharged. Chapter XIII, at least as it was carried out prior to the more recent changes in the bankruptcy laws, was designed to permit an overburdened debtor to seek relief by placing his future income in the hands of a trustee for the purpose of composing or extending his obligations among his creditors. *See* in general, 10 Collier on Bankruptcy, 14th Ed., p.

3. The fact that the Ransoms were signatories to these two contracts upon which the appellants claimed the right to recover may or may not have been the circumstance that caused them to seek relief under Chapter XIII. We conclude, therefore, that under the Alabama statute it is clear that the trial court correctly found against the appellants for the total amount of the finance charge.

(1) any actual damage sustained by such person as a result of the failure;

\* \* \* \* \* \*

(2)(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor....

15 U.S.C. § 1640.

The trial court allowed as "actual damages" under section 1640(a)(1) the additional finance charge paid by each class member which exceeded the legally permissible finance charge. The court then, in addition, under § 1640(a)(2)(B) allowed a recovery of one percent of the net worth of each of the two defendants.

■ The appellants contend that the record did not permit a determination by the trial court of the existence of any actual damages. We conclude that this contention was without merit for the record discloses that each of the members of the class had signed contracts which were illegal but upon which they were ostensibly liable and which had not been voluntarily cancelled by the defendants prior to the trial. It was therefore clearly appropriate for the trial court to require a payment to each of the named members of the class of a cash amount that would offset their outstanding obligations which would otherwise remain collectable against them.

■ The only available defense argued by the appellants against the penalty award under subparagraph (B) is that it should have been assessed only against S & S Food Center, Inc. and not against Rich Plan. On the record before the trial court, it was clearly evident that these two defendants were jointly creditors of the Ransoms. It was therefore appropriate for the trial court to consider the net worth of both creditors. We are not persuaded by the

fact that the Court of Appeals for the Fourth Circuit has arrived at a different conclusion in *Barber v. Kimbrell,* 577 F.2d 216 (4th Cir.1978). We are inclined to agree, rather, with that part of the dissenting opinion in *Berryhill* which states:

Application of these different views cuts both ways. The first would reduce the recovery allowed by my brethren; the second would increase it. The plaintiffs would reap an even more bountiful harvest than my colleagues permit. This does not cause me undue concern. In blunter terms, I view the so-called Food and Freezer Agreement as a sham to exact unconscionable charges from the credit buyer, who is the only one who ever pays them. We need not shrink from the consequences the defendant's overreaching has brought to itself.

578 F.2d 1102.

F. *Cross-Appeal on the Availability of a Class Action Under the Alabama Statute*

On August 24, 1977, the trial court entered an order certifying the cause as a class action and defining the class, both as to the claim under the TILA and the claim under the Alabama Consumer Finance Act. The court subsequently, on April 21, 1978, decertified the class with respect to the state law claims. It is apparent that the court entered this order on its determination that such a class action was not available to a group of debtors under the Alabama laws. In arriving at that conclusion, the court depended largely upon a concurring opinion in *Taylor v. Major Finance Co., Inc.,* 289 Ala. 458, 268 So.2d 738 (1972) and on two United States district court cases.

As to the *Taylor* opinion, it must be noted first that the concurring opinion was not the opinion of the court and it was *dictum.* The only issue before the court was whether the Supreme Court of Alabama had jurisdiction over the appeal as being from a final judgment. The court concluded that it had no such jurisdiction, because the orders appealed from did not constitute a final judgment. In the concurring opinion,

Justice Maddox undertook, however, to give his reason why the trial court was correct in dismissing a class action in the debtors' suit against their creditor. Moreover, and much more importantly, it is to be noted that Maddox' opinion was written before the adoption by the Supreme Court of Alabama of its class action Rule No. 23, which closely parallels Federal Rules of Civil Procedure, Rule No. 23. It is, therefore, clear now that under Alabama Rule 23, class actions may be brought without any limitations, so far as the Rule is concerned, on behalf of a class which meets the requirements of the Rule. That this is so is clearly indicated by the recent decision by the Alabama Supreme Court in *Amason v. First State Bank of Lineville*, 369 So.2d 547 (1979). In *Amason* the trial court had dismissed a class action brought by a group of debtors against their creditor bank on the ground that the named debtor was not a member of the class which he sought to represent. On appeal the Alabama Supreme Court found that the trial court correctly ruled against the class action on motion for summary judgment because it appeared from the record that the named plaintiff was not a debtor of the bank at the time his action was filed and thus he did not meet the requirements of Rule 23, because he did not show an identity of interest with the class which he sought to represent. By clearest implication, we conclude that the Alabama court recognized the validity of such a class action if the named plaintiff did in fact identify his interest with that of the members of the class.

While we recognize that the allowance of a pendent state action is largely discretionary with the trial court, it appears here that the court did not exercise an unfettered discretion but denied the right of the class to proceed upon what we now determine to be an incorrect understanding that under the Alabama law no such class action could subsist. It is necessary, therefore, that the trial court now have an opportunity to determine whether it will permit the state case to pend under the principles announced in *Mobil Oil Corp. v. Kelley*, 493 F.2d 784, 788–89 (5th Cir.1974). There,

the Court of Appeals for the Fifth Circuit said:

> ... where the complaint itself alleges a claim with respect to which the federal courts are given jurisdiction and, in addition, a claim based on state law arising out of a common nucleus of operative fact, the federal court may adjudicate both claims in a single proceeding without requiring the parties to present the same facts to two different courts, *United Mine Workers v. Gibbs*, 1966, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218; *Hurn v. Oursler*, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; *Connecticut General Life Insurance Co. v. Craton*, 5 Cir.1968, 405 F.2d 41 (footnote omitted).

In exercising its discretion, the court should consider the possibility whether the plaintiff class would be barred by the statute of limitations under the Alabama statute. *See Edmund G. Pharo, et al. v. W.L. Smith, et al.*, 625 F.2d 1226 (5th Cir.1980).

The judgment is AFFIRMED on direct appeal but the order of decertification of the Alabama class is VACATED and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion.