Rehavam ADIEL, et al., Plaintiffs,

v.

CHASE FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendants.

No. 79–1073–CIV–EPS.

United States District Court,
S.D. Florida,
Miami Division.

May 25, 1984.

Sidney L. Syna, Earl D. Waldin, Jr., Smathers & Thompson, Miami, Fla., for plaintiffs.

Aubrey Kendall, Jr., Miami, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

SPELLMAN, District Judge.

THIS CAUSE comes before the Court on the parties' respective Motions for Summary Judgment, and the Court having reviewed the pleadings and having heard oral argument, it is, hereby

ORDERED AND ADJUDGED that the Plaintiffs' Motion for Summary Judgment be GRANTED.

At issue here is whether the Defendant, Chase Federal Savings and Loan Association, [Chase], was required under law, 12 C.F.R. § 226.8 *et seq.*, to issue disclosure statements to the Plaintiffs, purchasers of residential homes, the mortgages of which homes are held by Chase. Chase admits that it did not issue disclosure statements, but defends its actions by claiming that the transactions are exempt from the Truth-In-Lending Act requirements. Both sides have moved for summary judgment, the issues being narrowed to those of law: whether the circumstances surrounding the conveyance of debt from the builder of the homes to the individual Plaintiffs constitutes a new transaction or extension of credit under § 226.8 *et seq.*, Title 12 C.F.R.

## STIPULATED MATERIAL FACTS

Plaintiffs' class comprises purchasers of residential dwellings at a complex known as Lakeridge, located in Dade County, Florida. The builder and seller of these single-family homes, a Florida partnership called Lakeridge, executed identical purchase agreements with each Plaintiff and attached similar form mortgage riders to each purchase agreement. In connection with the purchase agreements, Plaintiffs individually submitted mortgage loan applications directly to Chase. Said applications were for multi-purpose residential loans. It is clearly evident that the homes were being purchased primarily for *residential* use. After receipt of each application, Chase unilaterally inserted a clause indicating that the application was for the assumption of an existing mortgage on the individual lot in question, which mortgage had been executed by the builder to Chase. The initial mortgage obligated the builder (Lakeridge) to make regular monthly payments, for principal and interest, but Chase voluntarily waived this requirement from time to time.

Chase evaluated each application and sent form letters to each Plaintiff approving said application, specifically stating that each had been approved for assumption of the earlier loans by Lakeridge. Chase was aware that residential mortgage loans required Chase to issue an HUD–1 disclosure statement to the borrowers. Within a short time of sending the approval letters, Chase also mailed to each Plaintiff a standard policies and procedure form. As to the Plaintiffs Adiels, Chase required a charge for additional Private Mortgage Insurance prior to executing the mortgage. Chase also mailed to Plaintiffs prior to closing a good faith estimate of closing costs (on a standard form).

At or about the time of closing, each Plaintiff executed a standard form change of ownership and assumption of mortgage form. Chase received copies to the builder-purchaser agreement, change of ownership and assumption of mortgage forms, and said closing statements. There were no charges imposed for transfer fees on the several assumptions of the mortgages. At the time of closing, Plaintiffs were charged three loan points on their respective mortgages, paid to Lakeridge for reimbursement for its previous loan points paid at the closing of its construction mortgage.

The mortgages between the Plaintiffs and Chase were for a term of 28 years, the same as were the Lakeridge mortgages,

and required regular monthly payments, for principal and interest. Chase assumed the role of creditor as to the Plaintiffs in their status as primary obligors under the mortgages.

No federal truth-in-lending documents or disclosure statements were presented by Chase or by anyone else to the Plaintiffs. The Chase officer in charge of the transactions, Mr. Lucas, did not believe that that disclosure statements were required. Mr. Lucas based his decisions on staff opinions of the Federal Reserve Board and on the Regulations themselves (Sections 226.8(k), 226.804, and 222.807). These same staff opinion letters stated that the loans did not qualify as assumptions, but that the transactions did constitute refinancing, so that truth-in-lending disclosures should be made. Mr. Lucas did not consider the transactions in question to be refinancing, nor did he think of them as new financing.

## LEGAL NATURE OF THE TRANSACTION

With the above factual scenario in general agreement, the essence of this dispute appears as a narrow, legal question: whether the provisions of the Truth-In-Lending Act and Regulation Z required Chase to make credit disclosures to the Plaintiffs. The parties' Motions for Summary Judgment debate the applicability of § 226.8 of the Act in particular. To settle the question of applicability, the Court must determine the legal nature of the transaction in light of interpretative letters by the Federal Reserve Board and the general intent of the Act. Case law on this narrow factual situation is sparse, but some authorities are useful.

*1. The Federal Reserve Board Letters.* Plaintiffs rely heavily on letters by the Federal Reserve Board [FRB] which interpret portions of Regulation Z. Of particular importance is Opinion Letter No. 904, dated June 23, 1975, which classifies a situation similar to the one at bar as a *refinancing* of existing credit under § 226.8(j). FRB Letter No. 904 is an unofficial interpretation of the Regulation; the Court deems it necessary to first resolve the weight, if any, to be accorded to this type of authority.

■ Congress has recognized that credit transactions defy exhaustive regulation by a single set of rules; congress, therefore, "delegated *expansive* authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce in credit." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 560, 100 S.Ct. 790, 794, 63 L.Ed.2d 22 (1980) (emphasis added). The FRB and its staff are to be considered the authoritative source for interpretation and application of Truth-In-Lending Act. *Id.* at 566, 100 S.Ct. at 797. Regulations, rulings and letters by the FRB are to be given considerable weight by a Court in resolving complex consumer credit disputes.

■ Plaintiffs claim that that at least two letters by the FRB, Nos. 904 and 1157, are dispositive of the issues at hand, and they also rely on Letter No. 1147. Defendant properly insists that these letters should be useful only if they are not strained and unrealistic interpretations of Regulation Z and the Act. *See Charles v. Krauss Co., Ltd.,* 572 F.2d 544, 548 (5th Cir.1978); *Milhollin, supra,* 444 U.S. at 565, 100 S.Ct. at 796.

The Court notes at the outset that these letters are unofficial and not binding upon it. *Charles, supra,* 572 F.2d 544. However, they are none the less helpful as an indication of the Act's intent: to promote the informed use of consumer credit. 15 U.S.C. § 1601. Plaintiffs are individuals, natural persons, who have purchased the properties for residential purposes. As such, they are consumers and are intended to be protected by the Act.

If the letters do not contradict one another and are consistent with the Act's intent, and they are reasonable, the Court should look to them for guidance. Defendant Chase argues that, because the conclusion drawn in Letter No. 904 is not explained, it is unreasonable and contrary to the Act. Likewise, Letter No. 1157, which employs No. 904 as precedent, is also unreasonable,

according to the Defendant. Lastly, Chase argues that No. 1147 is not relevant to this situation.

■ The Court finds some merit in Chase's argument and is compelled to examine Letter No. 904 in detail, since that Letter appears to be directly on point here. No. 904 does not state any reasons for its conclusion that a transaction similar to the case at bar would be a refinancing, but not an assumption. Therefore the Court can only speculate about the logic underlying that conclusion, and the Court finds that the Letter No. 904 provides only an indication of the Act's intent and is not authority for a decision here. As to Letter No. 1157, a similar fault exists. Regarding Letter No. 1147, the Court believes that it, too, merely reflects the general intent of the Act to promote consumer credit.

In order to resolve this dispute, then, the Court finds that it must look directly at the regulations themselves.

*2. Section 226.8(k).* The Court is bound by its previous Order of September 24, 1980, dismissing Count I of the Complaint [under § 226.8(k)]. The transaction cannot be considered an "assumption."

■ *3. Section 226.8(j).* According to § 226.8(j), "if any existing extension of credit is refinanced, ... such transaction shall be considered a new transaction subject to the disclosure requirements of this section." Plaintiffs claim that because some of the terms of the mortgages were altered—most notably, the mortgagor—the transaction should be considered a new transaction under § 226.8(j). Plaintiffs rely on the FRB Letters as support for this proposition. Defendant argues that the terms were not changed, there was no refinancing, and that because the mortgages were originally *commercial* loans, the transactions in question were assumptions of commercial mortgages. Chase cites 12 C.F.R. § 226.2(jj) for the proposition that "credit" should be modified by "consumer"; thus, for a transaction to be considered a new transaction under § 226.8(j),

Chase says there must be an existing extension of [consumer] credit."

Defendant's argument is not persuasive. The intent of the Act and the peculiar facts of this case clearly mandate credit disclosure. The Act was designed to promote the informed use of *consumer* credit. The Plaintiffs plainly were *consumers* who desired credit for *consumer* purposes. Chase had full knowledge of their identities and intents. Section 226.2(jj), which Chase cites in opposition to the application of 226.-8(j), prefaces its rule with the words, "unless the context indicates otherwise." The context here clearly indicates otherwise.

From a logical perspective, § 226.8(j) should be analyzed with the remainder of § 226.8 in mind. Subsection (a) states the general rule, that "[a]ny creditor when extending credit other than open end credit shall, in accordance with § 226.6 and to the extent applicable, make the disclosures required by this section with respect to any transaction consummated on or after July 1, 1969." Section 226.6 discusses the procedures by which disclosures are made. Section 226.8 generally discusses the substantive nature of certain disclosures, and provides for only one exception to the general rule of 226.8(a): in § 226.8(j), qualifying agricultural loans are declared exempt. The portion of 226.8(j) relied upon by Plaintiffs and disputed by Defendant is stated not as an exception to the rule in § 226.-8(a), but only as a supplement to the rule, clarifying any misunderstanding regarding the refinancing of credit by a consumer. An extension of credit to a consumer which is not a refinancing is covered by the general rule in § 226.8(a). Chase does not cite any case law to dispute this statement.

Plaintiffs were consumers who applied to Chase for credit for consumer purposes. Chase required the applications and was empowered to approve or disapprove the individual Plaintiffs as borrowers. Plaintiffs were acknowledged to be new borrowers (in the Change of Ownership form). This Court can only conclude that the subject transactions were "new transactions" within the meaning of § 226.8(j).

870

Chase places great emphasis on the fact that it, as creditor, characterized these loans as "assumptions" of the previous loans to Lakeridge. But mere characterization by an interested party does not alter the true nature of the loans. The unilateral move by Chase to call these new loans "assumptions" should be treated as a self-serving declaration. It matters little whether Plaintiffs, presumably represented by competent counsel, acquiesced when later confronted with this characterization; Chase possessed much greater knowledge of the consequences.

The ruling of the Court is in line with legal precedent in this Circuit: a Court should look to the purpose of the loan to determine whether the Truth-In-Lending Act applies. *Poe v. First National Bank of DeKalb County*, 597 F.2d 895 (1979). The FRB opinion letters, specifically No. 904, also supports the Court's decision; although the Court considers it unnecessary to label the transactions as "refinancing" before they can be declared "new transactions," the conclusion of FRB Letter No. 904 is not unreasonable. The Court notes in passing that current regulations treat *any change* in the terms of a loan as a refinancing and thus a new transaction requiring credit disclosures under § 226.8(j). *See* 45 Fed.Reg. 20,882 (April 7, 1981).

Because the Court finds that the mortgages qualify as "new transactions" under 12 C.F.R. §§ 226.8(a), (j), the Plaintiffs' Motion for Summary Judgment is hereby GRANTED. Counsel are directed to submit an Order of Final Judgment to the Court within ten (ten) days from the date of this Order.