Rehavam **ADIEL, et al., Plaintiffs,**

v.

**CHASE FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.**

**No. 79–1073–CIV–EPS.**

United States District Court,
S.D. Florida,
Miami Division.

Jan. 30, 1986.

Sidney Syna and Earl D. Waldin, Jr., Miami, Fla., for plaintiffs.

Harvey Gurland, Miami, Fla., for defendant.

## MEMORANDUM OPINION & ORDER ON DAMAGES

SPELLMAN, District Judge.

### I

This suit, for an alleged violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, was originally filed as a class action in the Circuit Court of the Eleventh Judicial Circuit of Florida in and for Dade County. The Defendant, Chase Federal Savings and Loan Association, (CHASE), removed the case to this Court. On June 2, 1981, this Court certified the class as follows:

> Those purchasers of homes at the Lakeridge complex whose purchases were financed by the Defendant and which purchasers purchased said homes for his, hers or their family dwelling and utilized it for said purpose.

The parties were able to stipulate to the material facts in issue. Lakeridge, a Florida partnership, the builder and seller of these single family homes, executed identical purchase agreements with each Plaintiff and attached similar form mortgage riders to each purchase agreement. Along with these agreements, the Plaintiffs individually submitted mortgage loan applications to Chase. After receiving each application, Chase unilaterally inserted a clause indicating that the application was for the assumption of an existing mortgage on the lot in question, which mortgage had been executed by the builder to Chase. Chase evaluated each application, sent form letters to each Plaintiff approving the application, and stated that each had been approved for assumption of the earlier loans to Lakeridge. Chase also mailed to the Plaintiffs a standard policies and procedure form. At the time of closing, the Plaintiffs were charged three loan points on their respective mortgages. These were paid to Lakeridge for reimbursement for its previous loan points paid at the closing of the construction mortgage.

The mortgages between the Plaintiffs and Chase were for a term of 28 years, the same as were the Lakeridge mortgages, and required regular monthly payments, for principal and interest. Neither Chase nor anyone else in the chain of transactions presented the federal truth-in-lending documents to the Plaintiffs. The Chase officer claimed that he did not believe that the disclosure statements were required. He did not apparently consider the transactions to be refinancing or new financing.

In late 1981 and 1982, the parties filed cross-motions for Summary Judgment in which they debated the applicability of C.F.R. § 226.8 of the Act. By Order of May 25, 1985, this Court entered Summary Judgment for the Plaintiff and found that the mortgages qualified as "new transactions" under 12 C.F.R. § 226.8(a), (j). *Adiel v. Chase Federal Savings and Loan Assoc.*, 586 F.Supp. 866 (S.D.Fla.1984).

Thereafter, the Court scheduled an evidentiary hearing on damages which was in turn followed by an Order directing the parties to submit memoranda of law on the damages issue. In essence, the arguments are as follows. The Plaintiffs submit that *Ransom v. S. & S. Food Center Inc.*, 700 F.2d 670 (11th Cir.1983) is controlling on the question of monetary damages in the instant case and that the actual damages awarded to the class members should be the dollar amount of the loan points per transaction. They contend that this Court should award actual damages per transaction and that this should be shared among the number of purchasers/mortgagors to the transaction. In addition, they insist that the Plaintiffs are entitled to statutory damages of one percent (1%) limitation of the Defendant's net worth. The Defendants, on the other hand, claim that the Plaintiffs have failed to prove that they have sustained any actual damages as the result of Chase's violation of the Truth in Lending Act. They would like this Court to conclude at best that the Plaintiffs should be awarded only nominal statutory damages in the amount of $1.00 under the Act.

This Court incorporates herein the findings recited in its Opinion and Order entering Summary Judgment for the Plaintiffs. *Adiel v. Chase Federal Savings and Loan,* 586 F.Supp. 866 (S.D.Fla.1984). This Court, having conducted an evidentiary hearing, having heard the arguments of counsel and read the respective memoranda of law, and being otherwise duly advised, finds that the Plaintiffs are entitled to an award of statutory damages.

## II

15 U.S.C. § 1640 in pertinent part provides:

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure.

To recover actual damages, each member of the class must prove that "he or she would have gotten credit on more favorable terms but for the violation." *McCoy v. Salem Mortgage Co.,* 74 F.R.D. 8, 12 (E.D. Mich.1976). Relying on *McCoy,* the Court in *Vickers v. Home Federal Savings and Loan Assoc.,* 62 A.D.2d 1171, 404 N.Y.S.2d 201, 202 (Sup.Ct.1978) explained the showing necessary for a Plaintiff to recover actual damages under the Act.

A plaintiff claiming actual damages must establish a causal connection between the inaccurate disclosure and his injury by demonstrating that he relied on the inaccurate disclosure and thereby was effectively prevented from obtaining better credit terms elsewhere.

This "but for" test operates to effectuate the very purpose of the Truth in Lending Act expressed in part in 15 U.S.C. § 1601:[1]

(a) The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of the subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

At the hearing on damages, this Court afforded the Plaintiffs an opportunity to present evidence of the actual damages each member claimed he or she had sustained because Chase had failed to furnish the Regulation Z Disclosure Form.[2] The Plaintiffs submitted documentary evidence indicating the amount of loan points that Lakeridge had paid to Chase and the amount that the Plaintiffs had paid to Lakeridge and maintained that these loan points constituted their actual damages.

This Court, however, finds that the Plaintiffs have not met the requisite showing that they could have obtained credit on more favorable terms but for the alleged violation of the Act. In accord with the actual damages provision of 15 U.S.C. § 1640(a), each member of the class must come forward to prove his or her actual damages. *See Boggs v. Alto Trailer Sales, Inc.,* 511 F.2d 114, 118 (5th Cir.1975). In the instant case, the Plaintiffs have not complied with such requirements. In sum, they can not establish the "causal nexus" necessary for an award of actual damages.

---

**1.** *See also Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 219–20, 101 S.Ct. 2266, 2273–74, 68 L.Ed.2d 783 (1981); *Mourning v. Family Publications Service Inc.,* 411 U.S. 356, 363–68, 93 S.Ct. 1652, 1657–60, 36 L.Ed.2d 318 (1973).

**2.** The trial on damages in this case proceeded non-jury. Since neither the Plaintiffs nor the Defendant requested a jury trial, this Court will not become embroiled in the question of whether there is a right to a jury trial under the Act or for the purpose of determining the statutory award.

### III

The legislative history of the Act indicates that Congress was aware of the difficulty of establishing that causal link between the financing institution's non-compliance with the Act and the Plaintiffs' purported damages.[3] Courts have not only commented on this obstacle, but have also construed it to be the very impetus behind the legislative decision to construct a workable scheme of statutory damages. The court in *Riggs v. Government Employees Financial Corp.*, 623 F.2d 68, 71 (9th Cir. 1980) made it explicit that "the liquidated nature of Section 1640(a)(2)(A) damages is consistent with a remedial objective, for when an uninformed consumer loses the opportunity to secure better terms elsewhere, actual damages may be difficult to ascertain." *See also McCoy v. Salem Mfg. Co.*, 74 F.R.D. 8, 12 (E.D.Mich.1976).

The portion of the Act which enables a court to award statutory damages arising out of a Truth-in-Lending violation is clearly bifurcated. While 15 U.S.C. § 1640(a)(2)(A) provides for recovery in an individual action, Section 1640(a)(2)(B) pertains to the class action context. It reads:

> (B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor;

Although there is no minimum statutory recovery for class actions, the provision does set a maximum.

The statute also directs the court to consider five factors when setting the award:

> In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the re-

sources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

This Court finds that the application of the five factors set forth in the Act yields the most accurate and equitable results.

■ First, the Act directs the Court to consider the amount of actual damages awarded. As explained above, the absence of such an award does not preclude the recovery of statutory damages. *See Postow v. OBA Federal Savings and Loan Assoc.*, 627 F.2d 1370, 1384–85 (D.C.Cir. 1980). However, the lack of actual damages in some circumstances may militate against a high award. In other situations, if a high actual damage award is made, a court may find that a lower statutory award is justified. This Court has noted the insurmountable hurdle these Plaintiffs face with respect to proof of causation. Therefore, this Court elects to award the statutory damages in lieu of the actual damages in an amount this Court deems to be sufficient.

The second and fifth components to this analysis are logically related and for the sake of organization may be addressed as one: the frequency and persistence of failures of compliance by the creditor and the extent to which the creditor's failure of compliance was intentional. The facts of this case as set forth above and in *Adiel v. Chase Federal Savings and Loan*, 586 F.Supp. 866 (S.D.Fla.1984) indicate that the Defendant's practice was uniform with respect to the Plaintiffs. This Court has found and still finds the justifications behind Chase's decision that the federal truth-in-lending documents were not necessary to be quite unpersuasive. This Court need only reiterate the language of its earlier Order:

> Defendant's argument is not persuasive. The intent of the Act and the peculiar facts of this case clearly mandate credit

3. In 1972 the Vice Chairman of the Federal Reserve Board wrote a letter to Senator Proxmire and explained: "Actual damages for disclosure violations are likely to be nonexistent or extremely difficult to prove, particularly in the class action context. In short, the possibility of a successful class action for actual damages seems remote." 118 Cong.Rec. 14825 (1972).

disclosure. The Act was designed to promote the informed use of *consumer* credit. The Plaintiffs plainly were consumers who desired credit for *consumer* purposes. Chase had full knowledge of their identities and intents.

*Adiel* at 869. Chase did not proceed in the dark. The loan officer in charge of these transactions claimed to base his determination that the disclosure statements were not required on Staff Opinions of the Federal Reserve Board and on Regulations. But the Opinion Letters stated that although the loans did not qualify as assumptions, they did constitute re-financing. The loan officer refused to accept this characterization of the transactions as refinancing and disregarded the necessity for disclosure. This Court can only find that the Defendant intended to deceive consumers in violation of the Act. Furthermore, this Court finds the Defendant's practices to be of a degree sufficiently frequent and persistent to augur in favor of an award of statutory damages.

Third, this Court has noted the resources of the creditor in its determination of an award. The Court has been mindful of the Defendant's insistence that the net worth of Chase has declined during the period of 1978 to the present. Although the most recent figure was $17,200,000 as quoted in the Defendant's Memorandum of Law on Damages, the net worth in Defendant's exhibit at the time of the Hearing on Damages was $36,258,237.55. For the purposes of determining damages and taking into consideration the Defendant's resources, this Court accepts $36,258,237.55 as the accurate and applicable statement of the Defendant's net worth. It is the figure on Chase's financial statement at the time of the Hearing on Damages and this is the appropriate cut-off point for these purposes. The fourth element for consideration and the final one in this analysis is the number of persons adversely affected. In computing damages, this Court can not help but acknowledge the relatively small number of individuals in the class, a total of 149.

This Court awards the Plaintiffs a sum of $287,375.99. This amount takes into consideration the dollar amount of the loan points the Plaintiffs were charged and paid, $175,625.99, an amount documented by Plaintiff's list dated December 20, 1984. It also encompasses an additional amount of $750 for each of the 149 members of the class. This Court stresses the fact that the total award does not exceed the Congressional ceiling, 1 per centum of the net worth of the Creditor, or $362,582.38. This Court would also like to note that in arriving at its award of statutory damages, it has recognized the primary objective behind the damages provisions of the Act: the deterrence of Truth-in-Lending violations without bankrupting the creditor.[4] Such an award does not expose the institution to a crippling liability and yet it is sufficiently large to discourage future derelictions of duty.

## IV

In conclusion, the Plaintiffs are entitled to a total recovery of $287,375.99 in statutory damages to be shared among the purchasers/mortgagors to the transaction. The Plaintiffs are directed to submit to this Court within ten (10) days from the date of entry of this Order, a Final Judgment in accordance with the same.

The Truth in Lending Act allows for the recovery of the costs of the action, together with a reasonable attorney's fee. This Court hereby directs the prevailing party to submit within twenty-five days (25) of the date of the Final Judgment a renewed, complete, and updated Motion for such fees and costs together with a memorandum and affidavits to enable this Court to make such a determination. The Defendant shall file a Response not later than ten (10) days after service of said Motion.

---

**4.** *See* 118 Cong.Rec. 14796–837 (1972). *See also,* Dumars and O'Leary, *Class Action Damages Under the Truth in Lending Act: The Consumer Perspective,* 58 J.Urb.L. 699 (1981).