810 F.2d 1051
 55 USLW 2457
 Rehavam ADIEL, Eleanor Adiel, his wife individually and as
class representatives, Jerome Tepper, Letitia
Tepper, Paul L. Feldman, and Eleanor
Feldman, Plaintiffs-Appellees,
Cross-Appellants,
v.
CHASE FEDERAL SAVINGS AND LOAN ASSOCIATION,
Defendant-Appellant, Cross- Appellee.
 No. 86-5193.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 20, 1987.
 
 Harvey W. Gurland, Jr., Mershon, Sawyer, Johnston, Dunwody & Cole, Aubrey V. Kendall, Miami, Fla., for defendant-appellant, cross-appellee.
 Earl D. Waldin, Jr., Smathers & Thompson, Miami, Fla., for plaintiffs-appellees, cross-appellants.
 Appeals from the United States District Court for the Southern District of Florida.
 Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.
 HATCHETT, Circuit Judge.
 
 
 1
 In this appeal, the appellant urges that we reverse the district court's ruling that the Truth In Lending Act applies to a transaction in which a creditor makes a loan to a commercial entity with the knowledge that the loan will be assumed by a non-commercial entity with no changes in the terms of the loan. Finding no error, we affirm.
 
 FACTS
 
 2
 Rehavam and Eleanor Adiel, the class representatives in this class action, entered into a contract with Lakeridge Associated, Ltd. (Lakeridge), to purchase a townhouse to be built by Lakeridge.[1] Shortly thereafter, Lakeridge executed and delivered to Chase Federal Savings & Loan Association (Chase) an application for a mortgage loan. Chase approved the loan. Lakeridge executed a promissory note payable to Chase and a mortgage securing the loan. Lakeridge used the funds from the loan to construct the townhouse.
 
 
 3
 As provided for in the purchase agreement, the Adiels submitted a mortgage loan application directly to Chase for the same amount as Lakeridge's loan. The purchase agreement between Lakeridge and the Adiels provided that the Adiels would reimburse Lakeridge for loan costs, including loan points, paid to Chase. The agreement further provided that should the Adiels secure financing with a lending institution other than Chase, the Adiels would pay Lakeridge "an additional 2% of the purchase price for [Lakeridge's] closing the transaction with [the Adiels'] lender."
 
 
 4
 The Adiels' application for a loan with Chase was for a multi-purpose residential loan. Upon receipt of the application, Chase unilaterally inserted a clause indicating that the application was for the assumption of an existing mortgage on the lot the Adiels had agreed to purchase. The mortgage to be assumed was the mortgage Lakeridge executed in favor of Chase, which obligated Lakeridge to make regular payments of principal and interest. The parties are in disagreement as to the amount of mortgage payments actually made by Lakeridge, but they agree that at some time Chase voluntarily waived its right to full payments on the note and mortgage.
 
 
 5
 Chase evaluated the Adiels' application, and notified them that they had been approved for assumption of the Lakeridge mortgage. At or about the time of closing, the Adiels executed a standard change of ownership form and an assumption of mortgage form. They also reimbursed Lakeridge the loan points which Lakeridge had paid Chase. The Adiels at this point became primary obligors under the note and mortgage.PROCEDURAL HISTORY
 
 
 6
 The Adiels brought this class action seeking damages for Chase's failure to present them with truth-in-lending documents. Chase contended, based upon various staff opinions of the Federal Reserve Board, and based on the implementing regulations, that truth-in-lending disclosures were not required.
 
 
 7
 The district court held that the transactions were subject to the provisions of the Truth In Lending Act and found that Chase did not comply with the provisions set forth in Regulation Z.[2] 15 U.S.C. Secs. 1601-1693. Adiel v. Chase Fed. Sav. & Loan Ass'n., 586 F.Supp. 866 (S.D.Fla.1984). The district court awarded the class statutory damages of $287,375.99. 630 F.Supp. 131.
 
 
 8
 Chase, the appellant, contends that the loans made to Lakeridge were for a business purpose; therefore, the loans are exempt from the Act. Additionally, Chase contends that the assumptions of the notes and mortgages were not "new transactions" within the meaning of 12 C.F.R. 226.8(j) and not refinancing.
 
 
 9
 Chase and the class urge that we find error in the damage award. Chase argues that the district court erred in awarding almost the maximum amount of statutory damages allowable under the Act. By cross-appeal, the class urges a finding of error in the district court's ruling that to recover actual damages, each class member must show that but for the violation, better credit on more favorable terms would have been obtained.
 
 DISCUSSION
 
 10
 Title 12 C.F.R. Sec. 226.8(a) states the general rule that "[a]ny creditor when extending credit other than open end credit shall, ... make the disclosures required by this section with respect to any transaction consummated on or after July 1, 1969."
 
 
 11
 Section 226.3(a) of Regulation Z provides that the Truth In Lending Act does not apply to "[e]xtensions of credit to organizations, including governments, or for business or commercial purposes...."
 
 
 12
 We must look to the purpose of the loan to determine whether the Truth in Lending Act applies. Poe v. First National Bank of DeKalb County, 597 F.2d 895 (5th Cir.1979). Although the funds in this case were originally loaned to Lakeridge to construct townhouses, and were thus used for commercial purposes, to find that no consumer credit transaction occurred between Chase and the Adiels (the class) is to ignore the commercial reality of the situation. Chase would have us adopt a rule that in situations such as this, in which a loan is sought by a party with the express intention of transferring responsibility shortly thereafter to a third party, that the proper focus is only upon the original transaction. Chase thus argues that because the funds in this case were initially loaned to a commercial entity for a business purpose, the loan arrangement cannot be considered a consumer transaction. This theory is without merit.
 
 
 13
 It was clearly contemplated at the outset that the ultimate obligation would run from the Adiels to Chase. This is partly shown by the fact that Chase did not hold Lakeridge to strict compliance with the terms of the mortgage. Additionally, by imposing upon the Adiels a 2-percent "penalty" should they obtain financing elsewhere, the Adiels were left with no other reasonable choice than to apply to Chase for a mortgage. We agree with the district court: the ultimate purpose of the loan was to extend consumer credit to the Adiels.
 
 
 14
 Title 12 C.F.R. Sec. 226.8(j) provides: "[i]f any existing extension of credit is refinanced, or two or more extensions of credit are consolidated or an existing obligation increased, such transaction shall be considered a new transaction subject to the disclosure requirements of this Part." Chase argues that no "refinancing" occurred in this case because no existing extension of consumer credit was assumed and no change was made in the terms of the Lakeridge loan when the Adiels "assumed" it.[3] Chase further argues that it has found no cases in which a court found a "refinancing" which involved a situation other than a change in the terms of an existing consumer loan to the same person. Chase notes that none of the terms in this case were changed; the monthly payments, maturity dates, and interest rate remained the same. Consequently, the transactions were originally commercial loans and were assumed as commercial loans.
 
 
 15
 Chase argues that in order for section 226.8(j) to apply, an existing extension of consumer credit must be in effect. Chase also cites 12 C.F.R. Sec. 226.2(jj) which provides, "[u]nless the context indicates otherwise, 'credit' shall be construed to mean 'consumer credit,' 'loan' to mean 'consumer loan,' 'transaction' to mean 'consumer credit transaction' and 'lease' to mean 'consumer lease.' " Chase's position is that a "new transaction" under section 226.8(j) really means an existing extension of "consumer" credit. We hold that in this case, the context indicates otherwise.
 
 
 16
 The intent of the Truth In Lending Act is to promote the informed use of consumer credit. 15 U.S.C. Sec. 1601(a). The Adiels and the other class members were consumers who desired credit for consumer purposes. Chase was fully aware of their identities and of the purposes for which they intended to use the funds. Chase required the Adiels and the other class members to submit applications for loans and reserved the right to disapprove their applications. The change of ownership forms showed them to be new borrowers. We thus hold that the transactions constituted "refinancing."
 
 DAMAGES
 
 17
 Chase also contends that the district court abused its discretion in its award of statutory damages under the Truth In Lending Act. After review of the district court's memorandum opinion and order on damages, we conclude that its award of $287,375.99 to the class fell within the statutory maximum in 15 U.S.C. Sec. 1640(a)(2)(B), and we conclude that the district court properly considered the factors set forth in the statute.
 
 
 18
 The Adiels, for the class, cross-appeal the damage recovery contending that the district court erred in failing to also award them actual damages. The class contends that the loan points paid to Lakeridge as reimbursement constituted an illegal finance charge and should be considered damage actually incurred. The Class members may have been led to believe they were paying the loan points directly to Chase and not as reimbursement to Lakeridge. Yet, it does not follow that the charge was illegal. They contracted to "pay the lending institution's closing costs" which included "loan points and all other costs directly related to the Mortgage." Since they were the ultimate recipients of the loans, this is not unreasonable.
 
 
 19
 The district court stated that it was awarding statutory damages in lieu of actual damages due, in part, to the fact that actual damages in cases such as these are difficult to prove. The statute sets forth as one of the factors to be considered in determining statutory damages the amount of actual damages incurred. In determining the amount of damages, the district court took into consideration the dollar amount of loan points the class paid and imposed an amount of $750 for each of the 149 members of the class. Thus, the amount which the class seeks to characterize as actual damages was awarded as part of the statutory damages. We note that the class seeks to have this amount characterized as actual damages in an attempt to recover prejudgment interest. The district court did not abuse its discretion in awarding statutory damages rather than actual damages.
 
 
 20
 Accordingly, the district court is affirmed.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 The district court certified the class as: "Those purchasers of homes at the Lakeridge complex whose purchases were financed by the Defendant and which purchasers purchased said homes for his, hers, or their family dwelling and utilized it for said purpose."
 Other class members' transactions were similar to the Adiels'; therefore, we use the Adiels' transaction as an example.
 
 
 [2]
 Regulation Z, the truth-in-lending regulation, can be found in the form in which it existed at the time of these events in Title 15 U.S.C.A. following section 1700. The provisions of Part 226 of Title 12 of the Code of Federal Regulations were subsequently replaced by a new set of regulations. All references in this opinion are to the sections in effect at the time of these events
 
 
 [3]
 Title 12 C.F.R. Sec. 226.8(k) provides, in pertinent part:
 (k) Assumption of an obligation. Any creditor who accepts a subsequent customer as an obligor under an existing obligation shall make the disclosures required by this part to that customer before he becomes so obligated.
 The district court found an "assumption" did not exist because the Adiels did not conform to the Act's definition of "subsequent customers." The district court concluded that because Lakeridge was not a "customer" under the Act, the Adiels did not meet the definition of a "subsequent customer," and thus no "assumption" occurred under the Act. This issue was not directly raised on appeal.