Dorothy McCOY, Plaintiff,

v.

SALEM MORTGAGE COMPANY et al., Defendants.

No. 4–71311.

United States District Court, E. D. Michigan, S. D.

Oct. 14, 1976.

Abdeen M. Jabara, Randall M. Wokas, Wayne County Consumer Protection Agency, Detroit, Mich., for plaintiff.

Irwin M. Alterman, Southfield, Mich., Irving M. Stahl, Detroit, Mich., Eric A. Simon, Southfield, Mich., for defendants.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This is a motion for class decertification brought by defendant Salem Mortgage Company, partly in response to plaintiffs' motions to amend their complaint to include a claim for actual damages and to substitute the administratrix of the estate of plaintiff, Dorothy McCoy, as the named representative. The underlying claim involves an alleged violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., arising out of a credit transaction wherein plaintiff, Dorothy McCoy, borrowed $1500.00 from the defendant, Roland Benge and Company, secured by a first mortgage on the plaintiff's home. The transaction was arranged by the defendant Salem Mortgage Company acting in the capacity of mortgage broker.

This Court issued an opinion on August 27, 1975, reviewing the legislative history of Truth in Lending and certifying the class. At that time, the Court found that the proposed class action satisfied all the requirements of Rule 23 of the Federal Rules of Civil Procedure. Specifically, named plaintiff Dorothy McCoy was found to be an adequate representative because "[l]ending claims of all the Borrowers [were] coextensive" and would "stand or fall together."

In the year that has passed since that opinion, however, the parties have made the Court aware of serious ramifications of the 1974 amendment to Truth in Lending. That amendment, fully reviewed in this Court's prior opinion, was designed to eliminate the "horrendous liability"[1] to which defendants were exposed under the original Act. Rather than placing the courts in a dilemma which had them choose between denying class actions altogether or permitting multi-million dollar recoveries against defendants for minor or technical violations, Congress placed a ceiling of $100,000 or 1% of net worth, whichever is less, on a defendant's statutory liability in any class action.

While that amendment appears on the surface to establish an equitable compromise which permits class actions without bankrupting defendants, it also creates an impossible situation for many plaintiffs. Whereas a plaintiff's statutory recovery in an individual action may be as high as $1000.00, the ceiling on class recovery may reduce that amount to almost nothing. That is so in the case of McCoy v. Salem Mortgage. The finance charges in each transaction generally exceed $500.00, and under the statute an individual would be entitled to the lesser of twice the finance charge or $1000.00. In a class action, however, the class recovery would be limited to 1% of Salem's net worth, approximately $5000.00. Divided by 761, the number of class members, the individual recoveries would be about $6.57.

Plaintiff McCoy testified at deposition that she had never heard of and did not desire a class action, and that she was interested in recovering as much money as possible against Salem. Such an attitude strongly suggests that McCoy's interests are opposed to those of other class members, and that she would therefore not be an adequate representative. Plaintiff argues, however, that the statute permits a named plaintiff in a class action to recover individual statutory damages in addition to the class recovery.

Since the legislative history does not address this issue, plaintiff relies on the remedial nature of the statute, the importance of class actions as an enforcement mechanism, and the use of the term "members of the class" rather than "named plain-

1. *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412 (S.D.N.Y.1972).

tiff" or "class representative" in committee reports discussing the amendment to the bill. This Court is persuaded, however, that the statute does not support such an interpretation. In the only cases to consider the issue directly, the courts have declined to read the statute to allow the named plaintiff and intervenors to recover individual statutory damages. In *Weathersby v. Fireside Thrift Co.*, CCH Consumer Credit Guide ¶ 98,640 (N.D.Cal., Feb. 25, 1975), the court emphasized that such a solution did not provide viable options for other class members and that it severely limited the discretion of the Court in fashioning an equitable remedy. The Court concluded:

> In view of the present state of confusion, the court concludes that the suggestion made by plaintiff and intervenor is not adequate. Congress may well have hoped that class actions would in some cases be maintained, but it did not provide a mechanism that would permit the courts to handle such actions. Plaintiff and intervenor properly point out that, under the new statute, it is likely no plaintiff will seek to represent a class if he thereby will reduce his own recovery. Nevertheless, plaintiffs should find the prospect of a mandatory award without proof of injury sufficient to stimulate them to bring suit . . .

The Court went on to note that the possibility of recovering both attorneys' fees and actual damages should encourage suits under the Truth in Lending Act and summarized by stating:

> Thus, although Congress may have intended not to foreclose the possibility of class actions for the statutory penalty, it cannot be said that such a class action is essential to the deterrent operation of the statute, and the court should not dilute the requirements of Rule 23 to permit it.

Three other cases suggest that plaintiffs' statutory interpretation allowing individual damages to the named representative is incorrect. In *Agostine v. Sidcon Corp.*, 69 F.R.D. 437 (E.D.Pa.1975), wherein the court allowed a class action to proceed because the named plaintiff agreed to accept only her pro rata share of the class recovery, the court discussed the problem posed by the 1974 amendment and summarized the findings of other courts as follows:

> *Weathersby v. Fireside Thrift Company* . . . is factually distinguishable from the present case. The plaintiff and an intervenor in that case sought to represent approximately one hundred and thirty (130) persons. They alleged that the form which the defendant used in connection with its loan failed to comply with the disclosure requirements of the Act and Regulation Z. The plaintiff hoped to recover $605, and the intervenor $460. Unlike plaintiff, they asked the court to provide, in the order certifying the class, that their individual recovery would not be affected by the certification. *The court quite rightly held that, because the plaintiff and intervenor might receive money that would otherwise go to unnamed class members, they could not fairly and adequately protect the interests of the class.* In *Boggs v. Alto Trailer Sales, Inc.*, supra, 511 F.2d [114] at 118, the court pointed out the problem by way of a hypothetical, but remanded to the district court for a determination on the merits of the class action motion. Finally, in *Postow v. Oriental Building Association*, supra, 390 F.Supp. [1130] at 1140–1141, the court, which ultimately granted a motion for a class action, held that notwithstanding this hypothetical problem the representative parties would fairly and adequately protect the interests of the class. (Emphasis supplied.)

In the case before this Court, named plaintiff Dorothy McCoy made clear before she died that her only interest in this action was to maximize her own recovery. Clearly her own interests would have been best pursued in an individual action wherein she might have recovered $1000.00, rather than her $6.57 pro rata share of any class recovery. Thus her own interests are antagonistic to those of other class members and she is not an adequate representative as required by Rule 23. It follows that McCoy's

administratrix, Weaver, is also not an adequate representative since she is bound to represent the interests of the decedent. The Court need not reach the issue of whether or not the statutory damage provision is a "penalty," an action which would not survive McCoy's death, since Weaver would not be an adequate class representative even if she were able to succeed to McCoy's claim.

■ Plaintiffs also propose that Nate and Geraldine Miller be substituted as named class representatives. While no evidence has been presented to indicate whether the Millers are prepared to forego their individual statutory recovery for their pro rata share of any class recovery, defendant has raised other questions concerning the Millers' ability to represent the class. Defendant first points out that the Millers' claim is not typical because they had no personal dealings with Salem except to execute the documents at Salem's office, and because they retained their own real estate agent who handled the complete transaction, including finding the best available loan. This objection, however, goes more to the typicality of the Millers' claim for actual damages rather than to the liability of Salem for disclosure violations of Truth in Lending, and does not disqualify the Millers as class representatives. Whether or not the Salem loan was arranged for the Millers through an intermediary is irrelevant to an alleged Truth in Lending violation based upon improper disclosure in Salem's forms.

■ Defendants further observe that the Millers' loan was used for the purchase of their residence, and that under the Act, 15 U.S.C. § 1639(a)(4), disclosure of the finance charges is not required in the case of a loan secured by a first lien on a dwelling and made to finance the purchase of the dwelling. The allegations in this case, however, do not concern the disclosure of finance charges but rather the misleading disclosure of brokers' commissions. The Millers would not be disqualified as typical class representatives merely because the Act does not require the disclosure of finance charges to consumers in their situation.

Defendants' objections thus do not disqualify the Millers as class representatives. The burden remains with plaintiffs, however, to come forward with positive evidence that they are willing to forego their individual statutory damages and accept only their pro rata share of any class recovery. Given such a showing the Court is satisfied that the Millers have typical claims for litigating as a class action the issue of Truth in Lending liability for improper disclosure.

■ Finally, the Court must consider plaintiffs' motion to amend their complaint to include a claim for actual damages. While the statute itself and the legislative history [2] both suggest that Congress intended actual damages as a class action remedy for Truth in Lending Act violations, this Court is convinced that the actual damage claims of class members must be resolved on an individual basis. The "common issues of law or fact" which make a class action superior for resolving issues of liability are not present in the claims for actual damages. Since each plaintiff will have to show that damages were sustained *as a result* of the failure to properly disclose, i. e., that he or she would have gotten credit on more favorable terms but for the violation, the proofs will necessarily be different for each class member. Defendant correctly notes that the Senate Committee report on the 1974 amendment mentions several times the difficulty of proving or computing actual damages in a Truth in Lending case. This difficulty seems to have been the impetus for establishing a scheme of statutory damages, and it seems likely that if actual damages could be computed by a simple formula, no statutory damage provision would have been necessary. The Court therefore rejects plaintiffs formula for actual damages based on the broker's fee plus contracted interest, because that formula simply does not reflect damage sustained "as a result of" the alleged violation.

2. Report of the Senate Committee on Banking, Housing and Urban Affairs of June 25, 1973.

Moreover, plaintiffs' analogy to the securities laws is not to the point. They argue that *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1465, 31 L.Ed.2d 741 (1972) allows an action for damages without proof of reliance for any material violation of Rule 10b–5. *Affiliated Ute*, however, was a nondisclosure case, far different from a misrepresentation or improper disclosure case. While plaintiffs urge that the materiality of the alleged Truth in Lending violation mandates a similar result because the violation made it difficult or impossible for consumers to shop for credit, both the language of the statute and the legislative history appear to contemplate actual damages based on reliance on the wrongful disclosure.

In *Grad v. Memorex*, 61 F.R.D. 88 (N.D. Cal.1973), a securities fraud case presented by plaintiffs as establishing a more fluid concept of reliance, the court began with the premise that reliance is an integral part of any 10b–5 action, then focused on the kind and quality of reliance which must be proved. The court went on the define reliance as a " 'causal nexus' between the alleged misstatements and an inflated price upon which plaintiffs relied," 61 F.R.D. at 100.

█ Yet to define reliance in terms of "causal nexus" in a Truth in Lending action is still to recognize that any actual damage claimed by plaintiffs must follow *as a result of* the disclosure violations. Unlike 10b–5, the roots of Truth in Lending are not in protection against common law fraud, and while any Truth in Lending violation necessarily makes the task of shopping for credit more difficult, that does not translate into a "material" violation. The scheme of Truth in Lending is clear: actual damages must involve a showing that the plaintiff could have gotten credit on better terms but for the breach. Because such a showing is so difficult, statutory damages are available to a plaintiff who can prove a technical violation.

This Court concludes that although the statute itself and the legislative history both suggest that actual damages are recoverable in a class action, it would be inappropriate to certify the class as to that issue because of the absence of common issues of law and fact in this case. A number of cases, including *Cutner v. Fried*, 373 F.Supp. 4 (S.D.N.Y.1974); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), and *Samuel v. University of Pittsburgh*, 375 F.Supp. 1119 (W.D.Pa.1974) have recognized that separate proceedings may be necessary to determine individual damages in class actions. In *Samuel*, wherein the court decertified the class after a determination of liability, the court cited the Advisory Committee Note on then proposed Rule 23 as follows:

"This provision recognized that an action may be maintained as a class action as to particular issue only. For example, in a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims." 39 F.R.D. 69, 106 (1966).

The Committee's thinking is in reference to the specific language of Rule 23(c)(4)(A) which provides: "When appropriate . . . an action may be brought or maintained as a class action with respect to particular issues."

In this case, as was held in the previous Opinion, 56 F.R.D. 435 (1972), the four prerequisites to the maintenance of a class action contained in Rule 23(a) were met as to the issue of liability. But now it is clear that the prerequisite of Rule 23(a)(2), the existence of questions of law or fact common to the class, is not met as to the issue of damages or restitution. Each and every class member will present an entirely different factual basis for her contention that she is due restitution.

█ While it would certainly be possible to allow the claim for actual damages and appoint a master when the proceedings reach that stage, the Court prefers to certify the class as to liability only. The determination of liability would then be res judi-

**14**

cata in any action the class members desire to bring individually on the issue of actual damages.

For the reasons stated in this opinion the Court denies plaintiffs' motion for leave to amend their complaint to include a claim for actual damages. The class will remain conditionally certified as to the issue of liability pending the presentation by plaintiffs' counsel of evidence that the Millers would accept their pro rata share of any class recovery and are therefore adequate class representatives.

An appropriate order shall be submitted.