HBH/jd

**Jose M. LOPEZ and, Jackeline Lopez, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**ORLOR, INC., Defendant.**

**Civil No. 3:95CV1890(PCD).**

United States District Court,
D. Connecticut.

Nov. 17, 1997.

Joanne Faulkner, Law Offices of Joanne Faulkner, New Haven, CT, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Charles E. Petit, Louise T. Walsh, Edelman & Combs, Chicago, IL, for Plaintiffs.

Edward W. Gasser, Skelley Rottner, P.C., Hartford, CT, Jon David Biller, Monte Allen Kroh, Biller Law Firm, North Haven, CT, for Defendant.

## RULING

DORSEY, Chief Judge.

Plaintiffs renew their motion for class certification with respect to Counts I and III. Plaintiffs also move for summary judgment as to liability on Counts I and III. For the reasons below, both motions are **granted.**

## I. BACKGROUND

Plaintiffs purchased a used car from defendant on March 23, 1995. In conjunction with the credit purchase of this vehicle, defendant sold plaintiffs a balance protection plan ("BPP") for $475. The BPP is designed to protect an insured consumer, if the car is stolen or totaled, from having to pay the outstanding balance on the car which may not be covered by insurance and the deductible. This protection relieves the consumer from having to pay for charges which are not covered by insurance, such as service contracts or finance charges. The BPP also covers the shortfall between the insurance coverage and the amount still owed, which may occur if the outstanding balance is greater than the bluebook value at the time of the theft or destruction.

The sales contract included disclosures meant to comply with the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* Defendant disclosed the BPP and its $475 cost as an "[a]mount paid to others." Plaintiff alleges that only $175 was paid to a third party, Shawmut bank. The balance was kept by defendant, allegedly in violation of TILA, concededly as a "commission."

Count I alleges TILA was violated in the improper disclosure of the BPP cost as an "amount financed," rather than as a "finance charge." Count III alleges TILA was violated by the inaccurate disclosure of the BPP cost.

Plaintiffs move for summary judgment on Counts I and III as to liability only. Plaintiffs also renew their motion for class certification. Plaintiffs assert that approximately 300 consumers purchased BPPs from defendant, all of whom are argued to be similarly situated to plaintiffs. Defendant opposes both class certification and summary judgment.

## II. ANALYSIS

### A. Class Certification

There are four prerequisites for a class action: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *Comer v. Cisneros,* 37 F.3d 775, 796 (2nd Cir.1994).

■ Once the prerequisites are met, class certification is appropriate in one of three circumstances. Fed.R.Civ.P. 23(b); *Comer,* 37 F.3d. Plaintiffs urge class certification under Rule 23(b)(3), which provides for certification where:

... questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

"When considering whether to certify a class, the allegations in the complaint are taken as true." *Rivera v. Fair Chevrolet Geo Partnership*, 165 F.R.D. 361, 363 (D.Conn.1996) ("*Rivera I* ") (citing *Sharif by Salahuddin v. New York State Educ. Dept.*, 127 F.R.D. 84, 87 (S.D.N.Y.1989)).

Plaintiffs allege that over three hundred have suffered the same injury. The numerosity requirement is satisfied since joinder of all members would be impracticable. *See, e.g., Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir.1969) (forty members sufficient for numerosity requirement); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir.1967) (eighteen held sufficient). Unquestionably the relevant questions of law and fact are common to plaintiffs and all members of the proposed class. Unquestionably plaintiffs' claims are typical of the claims of the proposed class.

Defendant questions the fourth prerequisite, i.e., whether plaintiffs will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). Defendant raises two objections in this regard: (1) that the named plaintiffs are inadequate representatives; (2) that their interests are adverse to those of other class members. Defendant furthermore asserts that all of the potential class members are already included in the class certified in *Rivera*. Defendant alternatively urges that, if granted, certification should be for purposes of liability only.

### 1. Adequacy Of Plaintiffs As Class Representatives

■ Defendant challenges plaintiffs' adequacy as class representatives in two respects. First, plaintiffs have not indicated that they will share costs. "[T]he only relevant inquiry is plaintiff's willingness to pay his *pro rata* share of expenses." *Rivera I* at 365. Defendant cites plaintiff's counsel's declination to let a plaintiff answer questions regarding his willingness to pay his *pro rata* share. Plaintiff's counsel however acknowledges in the deposition her client's responsibility for his share of costs. There is no basis to find that plaintiffs are unwilling to pay their *pro rata* share of costs, nor reason to deny certification on this basis.

■ Defendant's second challenge addresses plaintiffs' understanding of the litigation. A plaintiff's understanding has been held sufficient even where he "did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendant." *Rivera I* at 364 (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir.1981)). Defendant challenges plaintiffs' understanding because they cannot specify the federal statute underlying the action, and because one of the plaintiffs described the BPP as "insurance to protect the car." Jose Lopez Dep. at 21. Class representatives cannot be expected to be familiar with federal statutes such as TILA. Furthermore, while not technically "insurance" as described by Lopez, the BPP functions much like insurance from a layperson's point of view. The distinction urged by defendant is formalistic and does not demonstrate plaintiffs' inadequate representation of the class.

### 2. Plaintiffs' Alleged Adverse Interests

■ Defendant asserts that plaintiffs' interests are adverse to others in the class because of their prayer for both actual and statutory damages.

TILA plaintiffs may recover both actual and statutory damages. 15 U.S.C. § 1640(a). Statutory damages are capped under TILA. *Id.* The cap differs, depending on whether statutory damages are sought by an individual or by a class. "In a TILA class action, defendants are potentially liable [for statutory damages] for the lesser of $500,000 or one percent of a creditor's net worth." *Rivera v. Fair Chevrolet Geo Partnership*, 168 F.R.D. 11, 12 (D.Conn.1996) (*Rivera II* ) (citing 15 U.S.C. § 1640(a)(2)(B)). There is a different statutory limit for individuals. 15 U.S.C. § 1640(a)(2)(A). There is no cap on actual damages.

■ The maximum statutory recovery for individual TILA claims under § 1640(a)(2)(A)

may be greater than the *pro rata* amount recoverable for class members under § 1640(a)(2)(B). A conflict thus exists for a class representative who seeks the individual statutory recovery, which may actually *reduce* the class members' recovery since defendant's total liability to the class is limited. *Perry v. Beneficial Finance Co. Of New York, Inc.*, 81 F.R.D. 490, 495 (W.D.N.Y. 1979). Therefore, "a named plaintiff must waive the right to individual [statutory] recovery in order to bring a class action under the TILA." *Id.* at 496.

There is no conflict for a named plaintiff who seeks actual damages in addition to his or her *pro rata* share of the class statutory recovery. *Rivera I* at 365. Plaintiffs here do not seek individual statutory damages. They seek, along with all members of the proposed class, a *pro rata* share of statutory damages as well as actual damages. This is permissible. *Id.;* 15 U.S.C. § 1640(a) (specifically permitting recovery of both actual and statutory damages).

Defendant's reliance on *Brame v. Ray Bills Finance Corp.*, 85 F.R.D. 568 (N.D.N.Y. 1979), is inapposite. The issue in *Brame* was whether the class representatives may receive a greater than *pro rata* share of the class statutory recovery. Plaintiffs here do not seek a disproportionate share of the class recovery.

Defendant's reliance on *McCoy v. Salem Mtg. Co.* 74 F.R.D. 8, 13 (E.D.Mich.1976) is also misplaced. *McCoy* certified a class as to liability only and declined to certify a class as to actual damages, because actual damages were unique to each class member there. The *McCoy* court thus found insufficient commonality between the class members to warrant certification for purposes of actual damages. No such problem exists here, since it is apparent that actual damages are similar—if not identical—for each class member.

### 3. *Scope Of Certification*

■ Defendant argues that even if a class is certified, it should be certified as to liability only. As discussed above, defendant's reliance on *Brame, McCoy,* and *Perry* is misplaced. None of these cases held that

class actions are necessarily inappropriate for recovery of actual damages.

Defendant cites *Adiel v. Chase Federal S & L Ass'n,* 630 F.Supp. 131, 133 (S.D.Fla. 1986), *aff'd* 810 F.2d 1051, for the proposition that TILA plaintiffs cannot recover actual damages unless they could have gotten more favorable terms elsewhere. *Adiel* however does not so hold. The Eleventh Circuit in *Adiel* found that the district court did not abuse its discretion in not awarding class members actual damages because they had failed to show that they could have gotten more favorable terms elsewhere. 810 F.2d at 1054. *Adiel* found the ruling to be discretionary, not a *per se* rule urged by defendant. Other courts have declined to follow *Adiel 's* refusal to award actual damages absent a showing that more favorable terms were available. *See, e.g., Russell v. Fidelity Consumer Discount Co.,* 72 B.R. 855, 863 (Bkrtcy.E.D.Pa.1987). Furthermore the district court in *Adiel* declined to *award* actual damages; it did not refuse to certify a class for this purpose.

Accordingly the class is appropriately certified for damages as well as for liability.

### 4. *Class Certified In Rivera v. Fair Chevrolet Geo Partnership*

■ Defendant objects to class certification on the basis that all members of the proposed class are already members of the class certified in *Rivera v. Fair Chevrolet Geo Partnership,* 3:95CV485(PCD). Defendant worries that certification here would improperly permit plaintiffs double recovery. However the fact that plaintiffs are not entitled to double recovery does not bar a finding of joint and several liability. Defendant's concern is accordingly unfounded.

### 5. *Superiority Of Class Certification*

■ As discussed, the prerequisites of numerosity, commonality of issues, typicality of the representatives' claims, and adequacy of representation have been met. Certification is thus appropriate subject to "a finding that the class action is the superior method for fair and efficient adjudication of the controversy." *Rivera I* at 366 (citing Fed.R.Civ.P.

23(b)(3)). Rule 23(b)(3) lists factors pertinent to a finding of superiority:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

These factors weigh in favor of certifying the proposed class. There is little apparent interest for each class member to control his or her litigation, particularly given the relatively small individual recovery compared to the costs of litigation. Certification will not interfere with other litigation by class members, since there appears to be no such pending litigation outside of this action, a companion state case (also a class action), and *Rivera*. Certification here will not adversely affect these related cases. It is desirable to concentrate the litigation in one forum. Finally, there is no indication that management of the class will become burdensome or unwieldy.

The prerequisites of Rule 23(a) and the specific requirements of 23(b)(3) have been met. Accordingly the motion for class certification is granted. The class shall consist of all persons who bought vehicles from September 7, 1994 and later in consumer installment transactions in which defendant was the seller or creditor and whose purchase of the "balance protection plan" was allegedly included as part of the "amount financed" and was excluded from the "finance charge" and "annual percentage rate" in the disclosures concerning the transactions.

Notice must be sent to all class members advising them of their rights, including the right to opt out and the right to enter an appearance through counsel. Fed.R.Civ.P. 23(c)(2). On or before November 25, 1997, plaintiffs shall file a proposed method of notification and accompanying order.

**B.  Summary Judgment**

In a motion for summary judgment, the moving party must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual issue is "material" if it "might affect the outcome of the suit under governing law . . ." *Id.* A dispute regarding a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences are drawn against the moving party. *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2nd Cir.1987).

There are no disputes of material fact. Defendant has not filed a statement of material facts in dispute pursuant to Local Rule 9(c) and concedes that the issues presented by the motion for summary judgment turn entirely on questions of law. Def's Mem. in Opp. at 7.

As stated in the summary judgment ruling in the related *Rivera* litigation:

> TILA's purpose is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . .' 15 U.S.C. § 1601(a). To this end, TILA requires that creditors either specifically itemize certain charges associated with buying credit or include them in the finance charge.
>
> TILA, a remedial statue, is strictly interpreted in favor of the consumer. *Murphy v. Household Fin. Corp.,* 560 F.2d 206, 210 (6th Cir.1977). Any technical violation of the disclosure provisions of TILA will support an award of statutory damages. *Barrett v. Stamford Motors, Inc.,* Civil No. B–85–49, slip op. at 7 (D.Conn. Feb. 18, 1988). Violations are determined by an objective standard, i.e., the consumer need not have been deceived in fact for there to be a violation. *See Smith v. Chapman,* 614 F.2d 968, 971 (5th Cir.1980).

*Rivera v. Fair Chevrolet Geo Partnership,* 3:95CV485, slip op. at 3 (D.Conn. July 25, 1996) ("*Rivera* Summary Judgment Ruling").

### 1. *The BPP As A "Finance Charge"*

■ In Count I, plaintiffs argue that the BPP was a "finance charge" and should have been disclosed as such, rather than as part of the "amount financed." Finance charges must be disclosed to the consumer. 12 C.F.R. § 226.18(d). The term "finance charge" is defined in 12 C.F.R. § 226.4. The definition, as amended *after* the transactions in question, specifically cites debt cancellation fees, such as the BPP, as an example of a covered finance charge. 12 C.F.R. § 226.4(b)(10). The amended section allows exclusion of voluntary debt cancellation fees from finance charge disclosure if three conditions are met:

(A) The debt cancellation agreement or coverage is not required by the creditor, and this fact is disclosed in writing;

(B) The fee or premium for the initial term of coverage is disclosed . . .;

(C) The consumer signs or initials an affirmative written request for coverage after receiving the disclosures specified in this paragraph. Any consumer in the transaction may sign or initial the request.

12 C.F.R. 226.4(d)(3).

It is undisputed that defendant's sale of the BPP does not meet the first requirement, because there was no written disclosure that the BPP was optional. Defendant argues however that prior to the amendment, debt cancellation fees were not considered finance charges under TILA, thereby precluding liability for the transactions in question. It was originally held in *Rivera* that "TILA does not require a debt cancellation fee to be included in the finance charge." *Rivera* Summary Judgment Ruling at 5. However this determination was vacated on reconsideration. *See* Ruling On Pending Motions, December 11, 1996 at 5–7 ("*Rivera* Reconsideration Ruling"). The Reconsideration Ruling considered the above discussed regulatory amendments and held that the amendments did not change existing law, but rather, clarified it:

Because the new rule simply clarifies a confusing area of law, it is not changing the law, but rather restating what the FRB's [Federal Reserve Board's] view of the law has always been. *See Pope v. Shalala,* 998 F.2d 473, 483 (7th Cir.1993).

Therefore, the clarification relates back to the disclosures under the prior regulations at issue in this case. *Id.*

*Rivera* Reconsideration Ruling at 7. This conclusion was reached after review of the official comments to the amendments: "Paragraph 4(b)(10) *clarifies* that fees charged by creditors for debt cancellation coverage that is written in connection with a credit transaction are considered finance charges." *Rivera* Reconsideration Ruling at 6 (quoting 61 Fed. R. 49237, 49239).

Defendant's argument is thus unavailing since, "[i]t is evident from these comments that the FRB has always considered a debt cancellation fee to be a finance charge." *Id.* Paragraph 4(b)(10) is merely a clarification of the law as it stood at the time of transactions.

Defendant cites three cases which held that voluntary debt cancellation fees are not covered finance charges: *Fairman v. Schaumburg Toyota, Inc.,* 1996 WL 392224 (N.D.Ill.); *McGee v. Kerr–Hickman Chrysler Plymouth, Inc.,* 1995 WL 560909 (N.D.Ill.); *Dees v. Bob O'Connor Ford, Inc.,* 1995 WL 441629 (N.D.Ill.). These three cases were considered persuasive in the original *Rivera* Summary Judgment Ruling, but predated the amendments which underlie the Reconsideration Ruling's vacation of this conclusion. As discussed, the amendments clarify that voluntary debt cancellation fees are, and always were, finance charges under TILA. Accordingly, it is now apparent that these cases are unpersuasive.

### 2. *Good Faith Defense*

■ Defendant argues that, even if the BPP should have been disclosed as a finance charge, it cannot be liable because of its good faith interpretation of the regulations to the contrary. TILA allows a limited good faith defense:

[There shall be no liability for] any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the [FRB] or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the [FRB] to

issue such interpretations or approvals under such procedures as the [FRB] may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C. § 1640(f). This provision, however, only protects lenders from good faith reliance on FRB rules, regulations and interpretations which are later changed or invalidated. It does not provide blanket protection for creditors' good faith mistakes, nor from reliance on erroneous judicial decisions. *Hamilton v. Southern Discount Co.*, 656 F.2d. 150, 152 (5th Cir.1981) (citing *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565–70, 100 S.Ct. 790, 796–99, 63 L.Ed.2d 22 (1980)).

Defendant cites *Kessler v. Assocs. Fin. Serv. Co. of Hawaii, Inc.*, 405 F.Supp. 122, 126 (D.Haw.1975), for a TILA good faith defense for reasonable misinterpretations of TILA regulations. Disconcertingly, defendant does not point out that this district court decision was overturned on appeal: "Section 1640(f) creates no good faith defense based on the creditor's honest and reasonable, but mistaken interpretation of [TILA regulations]." *Kessler v. Assocs. Fin. Serv. Co.*, 573 F.2d 577, 579 (9th Cir.1977).[1] The good faith defense *applies only to reliance on the FRB's mistakes or subsequent changes.* It does not apply to reasonable, but mistaken interpretations by the creditor. *Hamilton*, 656 F.2d at 152.

■ "To avoid summary judgment, a defendant relying on section 1640(f) may not rest on a conclusory allegation that it acted in conformity with [FRB] interpretations. The defendant must point to specific regulations or interpretations which support its position." *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278, 1287 (7th cir.1980) (citations omitted), *rev'd on other grounds*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981).

Defendant asserts that it "relied on [ ] Regulation Z, and its supporting commen-

tary." Def's Mem. in Opp. at 11. Defendant does not identify a specific provision of this lengthy regulation or supporting commentary which underlies its good faith defense. As discussed above, the FRB has clearly stated that voluntary debt cancellation fees are, and always have been, finance charges which must be disclosed under TILA. Moreover, defendant cannot rely on mistaken judicial decisions which stated the contrary. Defendant accordingly cannot rely on a § 1640(f) good faith defense.

### 3. *Accuracy Of BPP Disclosure*

■ Count III alleges a TILA violation for inaccurately disclosing the BPP's cost. The contract discloses the entire $475 paid for the BPP as an "[a]mount paid to others." Def Ex. A. Defendant argues that its retention of part of this sum as a "commission" is not misleading. In support of this position, defendant states:

Although 15 U.S.C. § 1638(a)(2)(B)iii (sic), appears to require disclosure of a commission, until *Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 287 (April 23, 1997) (sic), no reported decision required disclosure of a product of this nature. In fact, the industry-wide standard was to disclose to the purchaser the fill purchase price of the product but not the commission.

Def. Amended Opp. at 2. These arguments are unavailing. Statutes are not toothless tigers devoid of effect until graced with import by judicial decree. Defendant cannot defend on the basis of an absence of judicial authority which has stamped with approval a particular statutory enactment. Furthermore, conduct deemed unlawful is not excused on the basis that others acted similarly.

Congress has clearly declared TILA's purpose:

[T]he purpose of [TILA is] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer

---

**1.** Failing to disclose that cited authority was overturned on appeal raises the specter of a violation of the Connecticut Rules of Professional Conduct, Rule 3.3.

against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a). To designate a payment as an "[a]mount paid to others," when in fact a only a fraction is paid to a third party, is misleading. Defendant's argument that plaintiff has not provided evidence that it could have gotten more favorable terms on such a package elsewhere is unavailing. Defendant's practice made it more difficult for consumers to compare prices and to use credit on an informed basis, contravening TILA's stated purpose. *Id.*

Finally, defendant opposes summary judgment on the basis that plaintiffs cannot recover for the same TILA violation for which they may recover in *Rivera v. Fair Chevrolet Geo Partnership.* Plaintiff cannot receive a double recovery but that does not preclude a finding of joint and several liability here. At the time of any judgment, a double recovery can be obviated. Plaintiffs here move for summary judgment on liability only. This argument thus has no bearing.

## III. CONCLUSION

Plaintiff's amended motion for class certification (doc 59) is **granted.** Plaintiff shall propose a method of notification to the class on or before November 25, 1997. Plaintiffs motion for summary judgment on liability as to Counts I and III (doc 56) is **granted.**

SO ORDERED.