**[PUBLISH]**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 21, 2000
THOMAS K. KAHN
CLERK

_____

No. 99-13381

_____

D.C. Docket No. 95-01212-CV-A-N

JACQUELINE TURNER, on behalf of herself and all others similarly situated,

Plaintiff-Appellant,

versus


BENEFICIAL CORPORATION, BENEFICIAL NATIONAL BANK, U.S.A.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(December 21, 2000)


Before CARNES and BARKETT, Circuit Judges and POLLAK*, District Judge.

BARKETT, Circuit Judge:

_____

  * Honorable Louis H. Pollak, U.S. District Judge for the Eastern District of
Pennsylvania, sitting by designation.

Jacqueline Turner brings this interlocutory appeal, pursuant to Federal Rule of Civil Procedure 23(f), from the denial of class certification in her suit alleging that defendant Beneficial Corporation ("Beneficial") committed violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA"), and the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO"), and also committed common law fraud in transactions related to its financing of Turner's purchase of a satellite dish.

**BACKGROUND**

This case arises out of Turner's purchase of a satellite dish system from Star Vision, Inc., prompted by a newspaper advertisement which indicated that monthly charges for service would be $39.95. The financing of the dish and the monthly service was to be provided through an agreement between Beneficial National Bank and Star Vision by way of an "Excel" credit card issued by Beneficial which could be used only to purchase goods and services from Star Vision. When the satellite system was delivered, the invoice reflected a monthly bill of $48.36, as did the Excel bill from Beneficial. With the Excel card, Turner had received TILA

disclosure statements, but Turner alleges that these disclosures failed to reveal the true cost of financing the purchase of the satellite dish.[1]

Although Turner concedes that she did not read Beneficial's disclosure statements at the time of receipt and therefore did not rely on them, she claims that she is entitled to damages for Beneficial's failure to provide disclosure statements that complied with the requirements of the law under TILA. Specifically, Turner's complaint charged that Beneficial's failure to provide her with the correct disclosure forms violated TILA (Count I) and the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count II) and constituted fraud by suppression (Count III). She sought certification of a nationwide class as to her TILA and RICO claims. She also sought certification of an Alabama subclass as to her fraud by suppression claim.

In Count I of her complaint, Turner sought both statutory and actual damages under TILA. The district court denied class certification on Turner's claim for statutory damages because Beneficial had already paid out the maximum allowable statutory damages in settlement of another suit arising out of the same TILA violation, and TILA bars any further class actions for statutory damages

---

[1] Specifically, Turner contends that, pursuant to 15 U.S.C. § 1638, Beneficial should have disclosed: (1) the number of payments; (2) the amount of each monthly payment; (3) the amount financed; (4) the total finance charge; (5) the total of payments; and (6) the total sales price.

arising out of that same violation. See 15 U.S.C. § 1640(a)(2)(B). The district court noted that Turner can still pursue statutory damages on her individual TILA claim. Turner filed a separate appeal from the denial of class certification on her claim for TILA statutory damages, but she has since moved to voluntarily dismiss that appeal.

As to Turner's claim for actual damages under TILA, Beneficial did not dispute Turner's claim that the disclosures were improper. Instead it pointed out that, because Turner did not read the disclosure statement, she had not relied upon it and thus could not have suffered actual injury as a result of Beneficial's TILA violation. The district court found that detrimental reliance is a necessary element not only of her damage claim under TILA but of her RICO and state fraud claims as well. Having determined that Turner could not prove reliance, the district court denied class certification on all three claims, and this appeal followed. We review class certification rulings for abuse of discretion. Armstrong v. Martin Marietta Corp., 138 F.3d 1374 (11th Cir. 1998) (en banc). We review de novo the district court's conclusions of law that informed its decision to deny class certification. DeKalb County School Dist. v. Schrenko, 109 F.3d 680, 687 (11th Cir. 1997).

**DISCUSSION**

4

A court can certify a class only when the requirements of Rule 23(a) and at least one of the alternative requirements of Rule 23(b) are satisfied. Jackson v. Motel 6 Mutipurpose, Inc., 13 F.3d 999, 1005 (11th Cir. 1997). Turner maintains that all of the requirements of Rule 23(a) are satisfied[2] and that the class also satisfies Rule 23(b)(3), which requires that questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The district court refused to certify a class on any of her causes of action because it found that Turner could not satisfy the typicality and adequacy requirements of Rule 23(a)(3) & (4) because she could not prove detrimental reliance. Thus, the issue in this appeal is whether detrimental reliance is a required element of a claim for actual damages under TILA, for a RICO claim, and for a fraudulent suppression claim under Alabama law. We discuss each in turn.

## 1. The TILA Claim

The TILA provision directly relevant to this case is that governing actual damages:

---

[2] A class may be certified if the following requirements are met: (1) numerosity: the class is so numerous that joinder of all members is impracticable; (2) commonality: questions of law or fact are common to the class; (3) typicality: the representatives of the class present claims or defenses that are typical of the class; and (4) adequacy: the representatives of the class will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person in an amount equal to . . .
(1) any actual damage sustained by such person as a result of the failure; . . . .

15 U.S.C. § 1640(a)(1) (1998). This provision must be understood in the context of TILA's general regulatory scheme.

In addition to actual damages, TILA provides three ways of remedying violations of its provisions. First, TILA empowers the Federal Trade Commission as its overall enforcement agency, 15 U.S.C. §1607(c), and provides other federal agencies with enforcement authority over specific categories of lenders. 15 U.S.C. §1607(a). The enforcing agencies are authorized to "adjust the account of the person to whom credit was extended, to assure that such person will not be required to pay a finance charge in excess of the finance charge actually disclosed or the dollar equivalent of the annual percentage rate actually disclosed, whichever is lower." 15 U.S.C. § 1607(e)(1).[3] Second, TILA imposes criminal liability on persons who willfully and knowingly violate the statute. 15 U.S.C. § 1611. Finally, TILA creates a private cause of action for statutory damages, which may be assessed in addition to any actual damages awarded.

---

[3] In other words, the enforcement agencies provide restitution to the victims of TILA violations, but this remedy is limited "if it would have a significantly adverse impact upon the safety or soundness of the creditor." 15 U.S.C. § 1607(e)(3)(A).

When TILA was originally enacted in 1968, it imposed no limit on statutory damages in class actions and required that each successful plaintiff be awarded a minimum of $100 in damages. Consumer Credit Protection Act of 1968, Title I, § 206(a), Pub. L. No. 90-321, 82 Stat. 146 (May 29, 1968). Congress amended TILA's statutory damages provision in 1974 in order to "strike an appropriate balance between the advantages of the class action as a vehicle of private enforcement and the need of creditors to avoid financial ruin." Barber v. Kimbrell's, Inc., 577 F.2d 216, 223 (4th Cir. 1978). Congress further capped defendants' liability for statutory damages by providing that the ceiling on statutory damages in a class action applies to all class actions arising out of the same TILA violation. Truth in Lending Simplification and Reform Act of 1980, Pub. L. No. 96-221 § 615(a)(1), 94 Stat. 132 (March 31, 1980). In the case of a class action, statutory damages are now limited to:

> such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor; . . . .

15 U.S.C. § 1640(a)(2)(B).[4]  Congress placed this ceiling on a defendant's

statutory liability in any class action so that courts would no longer have to

"choose between denying class actions altogether or permitting multi-million

dollar recoveries against defendants for minor or technical violations."  McCoy v.

Salem Mortgage Co., 74 F.R.D. 8, 10 (E.D. Mich. 1976).

While limiting statutory damages, Congress also amended TILA in 1974 to

permit private litigants, both as individuals and in class actions, to sue for actual

damages sustained "as a result" of the TILA violation.  15 U.S.C. § 1640(a)(1).

While statutory and regulatory damages provide at least a partial remedy for all

material TILA violations, actual damages insure that consumers who have suffered

actual harm due to a lender's faulty disclosures can be fully compensated, even if

the total amount of their harm exceeds the statutory ceiling on TILA damages.  In

this case we take it that the statutory ceiling has already been reached, and the sole

issue presented is whether a plaintiff must show detrimental reliance on a faulty

TILA disclosure in order to be eligible for an award of actual damages.  There is a

conflict among various courts on this issue.  Most courts that have addressed the

issue have held that reliance is an element in a TILA claim for actual damages.

---

[4] Under TILA Section 1640(a)(2)(A)(i), Turner would be entitled to individual statutory damages equal to "twice the amount of any finance charge in connection with the transaction."

See, e.g., Perrone v. General Motors Acceptance Corp., 2000 WL 1644100 at \*3-\*6 (5th Cir. Nov. 2, 2000); Stout v. J.D. Byrider, 2000 WL 1269402 at \*7 (6th Cir. Sept. 8, 2000); Peters v. Jim Lupient Oldsmobile Co., 220 F.3d 915, 917 (8th Cir. 2000); Bizier v. Globe Financial Services, Inc., 624 F.2d 1, 4 (1st Cir. 1981) (dicta); Hoffman v. Grossinger Motor Corp., 1999 WL 184179, \*4 (N.D. Ill. 1999); Brister v. All Star Chevrolet, 986 F.Supp. 1003, 1008 (E.D. La. 1998); McCoy, 74 F.R.D. at 12-13.  This Circuit is aligned with the minority of courts that have reached the opposite conclusion.  Ransom v. S & S Food Center, Inc. of Florida, 700 F.2d 670 (11th Cir. 1983); see also Lopez v. Orlor, 176 F.R.D. 35 (D.Conn. 1997); Sutliff v. County Savings & Loan Co., 533 F.Supp. 1307 (N.D. Ohio 1982); In re Russell, 72 B.R. 855 (Bankr. E.D. Pa. 1987).

In Ransom, the court affirmed the award of TILA actual damages to members of the plaintiff class who paid excessive finance charges but who had not alleged reliance.  The plaintiff class in Ransom purchased food plans comprising a bulk food order and a service contract designated as a "Food Freezer Service Agreement" ("FFSA").  Although the FFSA provided warranties and services with respect to the food purchases, it also included a finance charge assessed whether the purchase was made with cash or by credit.  Id. at 671-72.  The trial court found that the plaintiffs had suffered actual damages equal to the finance charge paid by

9

each class member in excess of the legally permissible finance charge. In addition, the district court assessed statutory damages. Id. at 677. The Ransom Court rejected the defendant's contention that the plaintiffs could not show actual damages, noting that

> the record discloses that each of the members of the class had signed contracts which were illegal but upon which they were ostensibly liable and which had not been voluntarily cancelled by the defendants prior to trial. It was therefore clearly appropriate for the trial court to require a payment to each of the named members of the class of a cash amount that would offset their outstanding obligations which would otherwise remain collectable against them.

Id.

Notwithstanding Ransom, the district courts in this Circuit have imposed a reliance requirement. See e.g., Perry v. Household Retail Services, Inc., 180 F.R.D. 423, 433 (M.D. Ala. 1998); Barlow v. Evans, 992 F. Supp. 1299, 1310 (M.D. Ala. 1997); Wiley v. Earl's Pawn & Jewelry, 950 F. Supp. 1108, 1114-1117 (S.D. Ala. 1997); Adiel v. Chase Fed. Sav. & Loan, 630 F.Supp. 131, 133 (S.D. Fla. 1986), aff'd, 810 F.2d 1051 (11th Cir. 1987). Several district courts in this Circuit have treated this Court's affirmance of Adiel as calling into question the continued viability of Ransom. Barlow, 992 F.Supp. at 1309-10; Wiley, 950 F.Supp. at 1114-17. Beneficial likewise urges that, to the extent that Ransom supports the proposition that a plaintiff need not show detrimental reliance in order

10

to sustain a TILA claim for actual damages, it has been overruled by <u>Adiel</u>. First, we note that a second panel of this Court cannot overrule a prior panel. <u>See</u> <u>Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069, 1076 (11th Cir. 2000); <u>United States v. Hogan</u>, 986 F.2d 1364, 1369 (11th Cir.1993). Second, we do not find that <u>Adiel</u> attempted to overrule or even distinguish <u>Ransom</u>.

In <u>Adiel</u>, the plaintiff class consisted of homeowners who had adopted existing mortgages on the lots on which their homes were situated. The loans had been executed by the builder of the homes to Chase Federal Savings and Loan Association ("Chase"), and neither Chase nor the builder provided to the homeowners the required TILA disclosures. 630 F.Supp. at 132. The plaintiffs urged the district court to follow <u>Ransom</u> and to award both actual and statutory damages, but the district court required each member of the class to prove that "he or she would have gotten credit on more favorable terms but for the violation." <u>Id.</u> at 133 (quoting <u>McCoy</u>, 74 F.R.D. at 12). The district court also quoted approvingly language from a New York State court decision in which the state court required that a plaintiff claiming actual TILA damages must show "that he relied on the inaccurate disclosure and thereby was effectively prevented from obtaining better credit terms elsewhere." <u>Id.</u> (quoting <u>Vickers v. Home Federal</u>

11

Savings & Loan Assoc., 62 A.D.2d 1171, 1172, 404 N.Y.S.2d 201, 202 (Sup. Ct. 1978).

On appeal, the plaintiffs argued that the district court had erred in ruling that "to recover actual damages, each class member must show that but for the [TILA] violation, better credit on more favorable terms would have been obtained." Adiel, 810 F.2d at 1053. This Court affirmed the ruling of the district court, stating only that the district court "did not abuse its discretion in awarding statutory damages rather than actual damages." Adiel, 810 F.2d at 1055. The opinion did not address the issue of reliance. Adiel only determined that the district court need not award actual damages when it has already provided a remedy through statutory damages and has taken into account, in considering the amount of statutory damages to award, the fact that no actual damages had been awarded. Id. at 1054-55.

More relevantly, in Jones v. Bill Heard Chevrolet, Inc., 212 F.3d 1356 (11th Cir. 2000), this Court directly rejected a defendant's argument that a TILA claim for actual damages fails if the plaintiff cannot demonstrate reliance on the defendant's misrepresentations. The defendant car dealership in Jones led its customers to believe that they were paying $2,495 to the General Motors Corporation for an extended service contract. In fact only $290 went to General Motors, while the dealer kept $2,205 as an "upcharge." Id. at 1358-59. In Jones,

12

the Court stated, "we reject Heard Chevrolet's contention that Plaintiff's TILA claim fails because Plaintiff cannot demonstrate reliance on its misrepresentations." Id. at 1363, n.7 (citing Charles v. Krauss Co., Ltd., 572 F.2d 544, 546 (5th Cir. 1978)).[5] The opinion in Charles does not state whether the plaintiff sought actual or statutory damages, but in stating that reliance is not a factor in TILA claims, Charles cites to McGowan v. King, Inc., 569 F.2d 845, 848 (5th Cir. 1978). McGowan noted that "[t]he basis of Section 1640(a) liability is the failure to disclose information required to be disclosed; there is no requirement that the plaintiff himself be deceived in order to sue in the public interest." Id. at 848-49. However, the McGowan court also concluded that once such a failure to disclose is shown, "the court must award [the plaintiff] the *statutory* penalty." Id. at 849 (citing Grant v. Imperial Motors, 529 F.2d 506, 510-511 (5th Cir. 1976) (emphasis added), and the Fifth Circuit awarded only statutory damages in that case. Id. at 850.

Beneficial argues that the Jones Court erred in relying on case law relating to claims for statutory damages under TILA in finding that there is no requirement that a plaintiff demonstrate detrimental reliance in order to be entitled to actual

---

[5] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

TILA damages. We agree with Beneficial, and with the other Courts of Appeals that have addressed the issue, that the plain language of TILA's actual damages provision requires a showing of detrimental reliance as part of any claim for actual TILA damages.[6] However, we are bound by the holding of the first panel of this Court to address an issue of law, unless and until that holding is overruled en banc or by the Supreme Court. Hogan, 986 F.2d at 1369. As we recently noted,

> the prior panel precedent rule is not dependent upon a subsequent panel's appraisal of the initial decision's correctness. Nor is the operation of the rule dependent upon the skill of the attorneys or wisdom of the judges involved with the prior decision – upon what was argued or considered. Unless and until the holding of a prior decision is overruled by the Supreme Court or by the en banc court, that holding is the law of this Circuit regardless of what might have happened had other arguments been made to the panel that decided the issue first.

Cohen, 204 F.3d at 1076.

In any case, while the Fifth Circuit precedents upon which Jones relies may not clearly apply to a case involving TILA actual damages, Jones does. Under Jones, the law of this Circuit does not require that a plaintiff asserting a claim for actual damages under TILA demonstrate reliance. This panel is convinced that, to the extent that Jones, and possibly Ransom, so hold, they are wrongly decided, and

---

[6] The legislative history behind the 1995 amendments to TILA lends further support to our reading of the actual damages provision: "To recover actual damages, consumers must show that they suffered a loss because they relied on an inaccurate or incomplete disclosure." H. Rep. No. 193, 104 Cong., 1st Sess. (1995).

14

this should be rectified by the en banc Court.  Until that occurs, however, we are bound to follow the law of this Circuit.  Accordingly, we find that the district court erred in holding that detrimental reliance is an element of a TILA claim for actual damages.

## 2.    The RICO Claim

In Count II of her complaint, Turner alleged that the crime underlying her RICO claim was a pattern of mail and wire fraud in violation of 18 U.S.C. §§ 1341 & 1343.  A plaintiff alleging mail or wire fraud as the predicate act for a RICO violation must show not only that the mail or wire fraud statutes have been violated but that he has "suffered injury as a result of the violation."  Pelletier v. Zweifel, 921 F.2d 1465, 1499  (11th Cir. 1991).  The Pelletier Court noted that the Supreme Court requires that a civil RICO plaintiff must show that he or she was injured by reason of the defendant's acts of deception.  Id. (citing Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).  Moreover, as we stated in Pelletier, this Circuit has held

> that a plaintiff has standing to sue under section 1964(c) only if his injury flowed directly from the commission of the predicate acts. This means that, when the alleged predicate act is mail or wire fraud, the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme.

15

921 F.2d at 1499-1500 (internal citation omitted). This substantive requirement applies to class actions. Andrews v. AT&T, 95 F.3d 1014, 1023-25 (11th Cir. 1996). Accordingly, we conclude that the district court did not err in finding that reliance is an element of a RICO claim and in denying class certification on that basis.

## 3. The State Fraud Claim

In order to establish a claim for fraudulent suppression, Turner must show that Beneficial knowingly suppressed a material fact that it had a duty to disclose and that, as a result of that suppression, Turner was induced to act or to refrain from acting, suffering damage as a proximate result. Ex parte Household Retail Serv., Inc., 744 So.2d 871, 879 (Ala. 1999). See also, McGriff v. Minnesota Mutual Life Ins. Co., 127 F.3d 1410, 1415 (11th Cir. 1997) ("Under Alabama law, to succeed on a claim of fraudulent suppression, [plaintiff] must show that [defendant] failed to disclose a material fact, thereby creating a false impression on which [plaintiff] relied, believing it to be true, which proximately caused damages.").

In a recent case involving a fraud by suppression claim, the Alabama Supreme Court stated that the duty to disclose, "applicable in the case alleging suppression, is analogous to the element of reliance applicable in the case alleging

16

a misrepresentation." Ex parte Government Employeees Ins. Co., 729 So.2d 299, 305 (Ala. 1999). Turner argues that this statement means that she can establish her fraud by suppression claim without showing reliance, so long as she can establish that Beneficial breached its duty to disclose. However, the Alabama Supreme Court has since clarified that a plaintiff's "justifiable reliance" is an essential element of a fraudulent suppression claim. Household Retail Serv., 744 So.2d at 879. As Turner cannot demonstrate that she relied on Beneficial's faulty disclosure statements, we conclude that the district court correctly found that Turner cannot satisfy Rule 23's typicality and adequacy requirements.

## CONCLUSION

For the foregoing reasons, the district court's denial of class certification on Turner's RICO and fraud by suppression claims is AFFIRMED. The order of the district court, denying class certification on Turner's TILA actual damages claim is VACATED, and the case is REMANDED for further consideration in light of this opinion.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.